**PORTLAND WATER DISTRICT**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

July 3, 1978.

Verrill & Dana, by Michael T. Healy, Portland (orally), for plaintiff.

Frederick S. Samp (orally), Public Utilities Commission, Horace S. Libby, Augusta, for defendant.

Before WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

On October 14, 1976 Portland Water District ("District") filed with the Public Utilities Commission ("Commission") a "Petition for Emergency Rates." The Petition asserted that the District's "present" (permanent) rates are "unreasonable, ·unjust, in-

sufficient and inadequate", and the District is

"in the process of preparing a rate case and intends to file a new schedule of rates pursuant to Section 64 seeking an increase in its permanent rates as soon as possible."

The Petition asked the Commission to authorize the District

"to implement on a *temporary emergency* basis a schedule of rates sufficient to increase its revenues so that it may amortize its operating deficits for 1975 and 1976 *within such period of time as may be prescribed by the Commission* so that the District may attract necessary capital on just and reasonable terms." (emphasis supplied)

Pursuant to the Commission's Rules of Practice and Procedure, the District prefiled its direct case. A hearing was held on December 13, 1976, and on January 21, 1977 the Commission authorized an "interim revenue increase of $164,341.00 . . ." (the District having requested $861,664.00). Stating expressly that it was acting solely pursuant to 35 M.R.S.A. § 311,[1] the Commission explained that the increased revenues authorized would on an annual basis

" . . . eliminate the projected loss *pending processing of the District's further rate increase request to be filed in February, 1977.*" (emphasis supplied)

The District thereupon placed on file with the Commission schedules of rates, tolls and charges to reflect the "interim revenue increase" allowed, and on February 8, 1977 the Commission approved the schedules as being in conformity to the temporary revision authorized.

On February 18, 1977 the District sought judicial review of the action of the Commission by filing an "appeal" under Section 303, and a "complaint" under Section 305 of 35 M.R.S.A.

On the same day, the District also took action pursuant to 35 M.R.S.A. § 64 by filing with the Commission schedules proposing new *permanent* rates in lieu of the then currently effective schedules of permanent rates as temporarily revised. These proposed new permanent rates would generate a substantial increase in the District's annual revenues.

Proceeding under 35 M.R.S.A. § 69, the Commission suspended the effectiveness of the District's proposed new permanent rates, initially for three months from March 21, 1977 and thereafter for five months from June 21, 1977. On July 27, 1977, the Commission authorized the District to file, in substitution for the schedules of new permanent rates which the District had proposed, schedules of new permanent rates calculated to generate an increase in the District's gross annual revenues of $666,-118.00—consisting of the $164,341.00 revenue increase previously allowed temporarily and now authorized as permanent, plus an additional $501,777.00. The District then filed new schedules of permanent rates purporting to conform to the substitute rates authorized by the Commission. The Commission approved the new schedules as in conformity to the authorization, and the new schedules of permanent rates became effective. There have been no proceedings for judicial review of the Commission's actions regarding the District's *new permanent* rates, and the time period for instituting such proceedings long ago expired.

Because of this supervening development that new *permanent* rates have become effective pursuant to Commission authorization, the District recognizes that there is a serious question whether the matter of the

1. 35 M.R.S.A. § 311 provides:

"Whenever the commission shall deem it necessary in order to prevent injury to the business of any public utility or to the interest of the people, or in case of any emergency which the commission may adjudge to exist, it shall have power, temporarily, to alter, amend or, with the consent of the public utility concerned, suspend any existing rates, schedules or orders relating to or affecting any public utility. Such rates so made by the commission shall apply to one or more of the public utilities in this State or to any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

Commission's alteration, on a temporary basis, of the *previously current* permanent rates has become moot. Acknowledging "partial" mootness, the District contends against total mootness. Its argument is that the Commission has not yet authorized rates adequate to enable the District to pay the short-term note indebtedness and deferred sinking fund contributions arising from the operating losses incurred in the two-year period 1975–1976 and, therefore, the injury addressed by the "Petition for Emergency Rates" is currently continuing.

This argument misses the point which is at the heart of the mootness question. Mootness is not determined, here, by the inquiry whether or not the *injury* complained of in the District's "Petition for Emergency Rates" is still continuing and can be prevented from further continuing. The crucial question is, rather, whether *those matters addressed by* the District's instant Section 303 appeal and Section 305 complaint—namely, the *errors* allegedly committed by the Commission in deciding the District's "Petition for Emergency Rates"—are *continuingly viable* as factors contributing to the District's injury or whether they have lost such pragmatic vitality, thus to be moot, because superseded by newly supervening matters which are the present independently responsible factors.

We are satisfied that the District's Section 303 appeal and Section 305 complaint now before us are in the posture of the latter alternative and are, therefore, moot.

The District's "Petition for Emergency Rates" asked a *temporary* alteration of the District's *then current permanent* rates, the District representing that it would be acting "as soon as possible" to seek to achieve *new permanent* rates. The Commission, therefore, and correctly so, responded by acting strictly pursuant to 35 M.R.S.A. § 311

"  .   .   .   temporarily, to alter,  .   . any existing rates, schedules or orders relating to or affecting any public utility",

said alteration to

"  .   .   .   take effect at such time and remain in force for such length of time as may be prescribed by the commission." [2]

Thus acting, the Commission on January 21, 1977 authorized

"an *interim* revenue increase of $164,341 which on an annual basis would eliminate the projected loss *pending processing of the District's further rate increase request to be filed in February, 1977."* (emphasis supplied)

When, indeed, the District in February 1977 commenced such proceeding for *new permanent* rates to generate increased annual revenues, the Commission in July of 1977 ultimately authorized such new permanent rates. Moreover, in arriving at its decision on the new permanent rates the Commission stated expressly that (1) it had taken into account

"  .   .   .   the historical experience of the District, *including deficit operations in 1975 and 1976"* (emphasis supplied)

and (2) the new permanent rates being authorized were designed to produce annual revenue increases which would now include as permanent the $164,341.00 previously "authorized for temporary purposes" as well as an additional increase on a permanent basis of $501,777.00—a total of $666,-118.00. As already mentioned, the District sought no judicial review either by Section 303 appeal or Section 305 complaint of these Commission determinations as to the District's *new permanent* rates, and the opportunity for such judicial review is gone.

It is thus plain that in deciding as to the District's new, and now effective, perma-

---

**2.** The District's "Petition for Emergency Rates" purported to address the Commission's powers under Sections 291 and 298, as well as under Section 311 of 35 M.R.S.A. However, since the Commission correctly treated the Petition as seeking a *temporary alteration* of the District's *then effective permanent* rates, rather than the authorization of a schedule of new permanent rates, the Commission properly regarded Sections 291 and 298 as inapplicable. *New England Telephone & Telegraph Company v. Public Utilities Commission*, Me., 354 A.2d 753, 766 n. 8 (1976).

nent rates, the Commission again considered the difficulties confronting the District because of its 1975 and 1976 operating losses and undertook specifically to remedy them, as the Commission deemed appropriate, by (1) reaffirming the propriety of the amounts previously granted as *temporary* increases and making them *permanent* increases and (2) authorizing a substantial additional amount as a permanent increase in annual revenues. Thus, the Commission's providing the District with *new permanent* rates, effective in July 1977, comprehensibly superseded the action by which the Commission had allowed alteration of the *former* permanent rates for the *temporary* period during the interim until *new permanent* rates would become effective.

If, therefore, the District continues to suffer injury attributable to its 1975 and 1976 operating losses, the factors now responsible for that injury are errors, if any, committed by the Commission in failing to make the new permanent rates adequate to deal with the consequences of the 1975 and 1976 operating losses—these being matters which the Commission specifically addressed in authorizing the new permanent rates. In short, the errors of the Commission as to the temporary revision of the *former* permanent rates *until* the Commission determined the just and reasonable *new* permanent rates of the District are no longer matters of live consequence now that the Commission has authorized new permanent rates which have become effective. Those prior errors, if any, have thus become entirely moot, and entirely moot with them are the instant judicial proceedings which address them.

The entry is:

The Section 303 appeal and the Section 305 complaint are dismissed for mootness.

McKUSICK, C. J., and POMEROY and DELAHANTY, JJ., did not sit.