CITY OF CHARLOTTE ET AL. *v.* LOCAL 660,
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, ET AL.

No. 75–250.   Argued March 3, 1976—Decided June 7, 1976

MARSHALL, J., delivered the opinion of the Court, in which
BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, REHN-
QUIST, and STEVENS, JJ., joined. STEWART, J., filed a statement con-
curring in the judgment, *post*, p. 289.

*William A. Watts* argued the cause for petitioners.
With him on the brief was *Henry W. Underhill, Jr.*

*Jonathan Wallas* argued the cause for respondents.
With him on the brief were *J. LeVonne Chambers* and
*Adam Stein.**

MR. JUSTICE MARSHALL delivered the opinion of the
Court.

The city of Charlotte, N. C., refuses to withhold from
the paychecks of its firefighters dues owing to their

---

**William M. Acker, Jr.,* and *Ezra B. Perry, Jr.,* filed a brief for
Mel Bailey, Sheriff of Jefferson County, Ala., as *amicus curiae*
urging reversal.

union, Local 660, International Association of Firefighters. We must decide whether this refusal violates the Equal Protection Clause of the Fourteenth Amendment.

## I

Local 660 represents about 351 of the 543 uniformed members of the Charlotte Fire Department. Since 1969 the union and individual members have repeatedly requested the city to withhold dues owing to the union from the paychecks of those union members who agree to a checkoff. The city has refused each request. After the union learned that it could obtain a private group life insurance policy for its membership only if it had a dues checkoff agreement with the city, the union and its officers filed suit in federal court alleging, *inter alia,* that the city's refusal to withhold the dues of union members violated the Equal Protection Clause of the Fourteenth Amendment.[1] The complaint asserted that

---

[1] Respondents brought suit under 42 U. S. C. § 1983, grounding jurisdiction in 28 U. S. C. §§ 1331 and 1343. As the Court of Appeals noted, insofar as the suit was brought against the city of Charlotte and the Charlotte City Council, the District Court was without jurisdiction under § 1343 since a municipal corporation is not a "person" within the meaning of § 1983. *City of Kenosha* v. *Bruno,* 412 U. S. 507 (1973). We need not decide whether respondents' allegation of $10,000 in damages was sufficient to confer § 1331 jurisdiction over the city and city council, see *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971); *Bell* v. *Hood,* 327 U. S. 678 (1946); Note, 89 Harv. L. Rev. 922 (1976), since respondents also sued the individual members of the city council and the District Court unquestionably had jurisdiction under § 1343 to consider those claims. See *Lynch* v. *Household Finance Corp.,* 405 U. S. 538 (1972). For convenience, we shall refer to all the petitioners collectively as the "city."

The District Court granted the city's motion to dismiss the complaint with respect to the union, the Court of Appeals affirmed, and certiorari was not sought on this ruling. Relief was granted only to the union officers who, in their capacity as city employees, had been denied a dues checkoff.

since the city withheld amounts from its employees' paychecks for payment to various other organizations, it could not arbitrarily refuse to withhold amounts for payment to the union.

On cross-motions for summary judgment, the District Court for the Western District of North Carolina ruled against the city. The court determined that, although the city had no written guidelines, its "practice has been to allow check offs from employees' pay to organizations or programs as required by law or where the check off option is available to all City employees or where the check off option is available to all employees within a single employee unit such as the Fire Department." 381 F. Supp. 500, 502 (1974). The court further found that the city has "not allowed check off options serving only single employees or programs which are not available either to all City employees or to all employees engaged in a particular section of City employment." *Ibid.* Finding, however, that withholding union dues from the paychecks of union members would be no more difficult than processing any other deduction allowed by the city, the District Court concluded that the city had not offered a rational explanation for its refusal to withhold for the union. Accordingly, the District Court held that the city's refusal to withhold moneys when requested to do so by the respondents for the benefit of Local 660 "constitutes a violation of the individual [respondents'] rights to equal protection of laws under the Fourteenth Amendment." *Id.,* at 502–503. The court ordered that so long as the city continued "without clearly stated and fair standards, to withhold moneys from the paychecks of City employees for other purposes," it was enjoined from refusing to withhold union dues from the paychecks of the respondents. *Id.,* at 503. The Court of Appeals for the Fourth Circuit affirmed, 518 F. 2d 83 (1975), and we granted certiorari. 423 U. S. 890 (1975). We reverse.

## II

Since it is not here asserted—and this Court would reject such a contention if it were made—that respondents' status as union members or their interest in obtaining a dues checkoff is such as to entitle them to special treatment under the Equal Protection Clause, the city's practice must meet only a relatively relaxed standard of reasonableness in order to survive constitutional scrutiny.[2]

The city presents three justifications for its refusal to allow the dues checkoff requested by respondents. First, it argues, North Carolina law makes it illegal for the city to enter into a contract with a municipal union, N. C. Gen. Stat. § 95–98 (1975), and an agreement with union members to provide a dues checkoff, with the union as a third-party beneficiary, would in effect be such a contract. See 40 N. C. Op. Atty. Gen. 591 (1968–1970). Thus, compliance with the state law, and with the public policy it represents of discouraging dealing with municipal unions, is said to provide a sufficient basis for refusing respondents' request. Second, it claims, a dues checkoff is a proper subject of collective bargaining, which the city asserts Congress may shortly require of state and local governments. Under this theory, the desire to preserve the checkoff as a bargaining chip in any future collective-bargaining process is in itself an adequate basis for the refusal. Lastly, the city contends, allowing withholding only when it benefits all city or departmental employees is a legitimate method for avoiding the burden of withholding money for all persons or organizations that request a checkoff. Because we find that this explanation provides a sufficient justification for

---

[2] *Memorial Hospital* v. *Maricopa County*, 415 U. S. 250, 253–254 (1974); *Dunn* v. *Blumstein*, 405 U. S. 330, 335 (1972); *Kramer* v. *Union School Dist.*, 395 U. S. 621, 626 (1969); *Williams* v. *Rhodes*, 393 U. S. 23, 30 (1968).

the challenged practice, we have no occasion to address the first two reasons proffered.

The city submitted affidavits to show that it would be unduly burdensome and expensive for it to withhold money for every organization or person that requested it, App. 17, 45, 55, and respondents did not contest this showing. As respondents concede, it was therefore reasonable, and permissible under the Equal Protection Clause, for the city to develop standards or restrictions to determine who would be eligible for withholding. *Mathews* v. *Diaz, ante,* at 82–83. See Brief for Respondents 9. Within the limitations of the Equal Protection Clause, of course, the choice of those standards is for the city and not for the courts. Thus, our inquiry is not whether standards might be drawn that would include the union but whether the standards that were drawn were reasonable ones with "some basis in practical experience." *South Carolina* v. *Katzenbach,* 383 U. S. 301, 331 (1966). Of course, the fact that the standards were drawn and applied in practice rather than pursuant to articulated guidelines is of no import for equal protection purposes.

The city allows withholding for taxes, retirement-insurance programs, savings programs, and certain charitable organizations.[3] These categories, the District

---

[3] The following payroll deductions are required by law: (a) federal income tax; (b) state income tax; (c) North Carolina Firemen's Retirement System; (d) North Carolina Local Government Employees Retirement System; (e) city, county, and state tax levies.

The following deductions are permitted for all city employees: (a) United States Savings Bonds; (b) medical and life insurance; (c) Aetna Deferred Compensation Plan (a savings program); (d) United Way.

The following deductions are permitted for all firemen: (a) Firemen's Benefit Fund (a group life insurance program); (b) Firemen's Credit Union (a savings and loan program); (c) Firemen's Voluntary Pledge Fund (a special withholding providing benefits to the survivors of deceased firemen).

Court found, are those in which the checkoff option can, or must, be availed of by all city employees, or those in an entire department. Although the District Court found that this classification did not present a rational basis for rejecting respondents' requests, 381 F. Supp., at 502, we disagree. The city has determined that it will provide withholding only for programs of general interest in which all city or departmental employees can, without more, participate. Employees can participate in the union checkoff only if they join an outside organization— the union. Thus, Local 660 does not fit the category of groups for which the city will withhold. We cannot say that denying withholding to associational or special interest groups that claim only some departmental employees as members and that employees must first join before being eligible to participate in the checkoff marks an arbitrary line so devoid of reason as to violate the Equal Protection Clause. Rather, this division seems a reasonable method for providing the benefit of withholding to employees in their status as employees, while limiting the number of instances of withholding and the financial and administrative burdens attendant thereon.

Given the permissibility of creating standards and the reasonableness of the standards created, the District Court's conclusion that it would be no more difficult for the city to withhold dues for the union than to process other deductions is of no import. We may accept, *arguendo*, that the difficulty involved in processing any individual deduction is neither great nor different in kind from that involved in processing any other deduction. However, the city has not drawn its lines in order to exclude individual deductions, but in order to avoid the cumulative burden of processing deductions every time a request is made; and inherent in such a line-drawing process are difficult choices and "some harsh and apparently arbitrary consequences . . . ." *Mathews* v. *Diaz,*

*ante,* at 83. See *ante,* at 82–84; *Dandridge* v. *Williams,* 397 U. S. 471, 485 (1970). Cf. *Schilb* v. *Kuebel,* 404 U. S. 357, 364 (1971); *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489 (1955).

Respondents recognize the legitimacy of such a process and concede that the city "is free to develop fair and reasonable standards to meet any possible cost problem." Brief for Respondents 9. Respondents have wholly failed, however, to present any reasons why the present standards are not fair and reasonable—other than the fact that the standards exclude them. This fact, of course, is insufficient to transform the city policy into a constitutional violation. Since we find a reasonable basis for the challenged classification, the judgment of the Court of Appeals for the Fourth Circuit must be reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART concurs in the judgment upon the ground that the classification challenged in this case is not invidiously discriminatory and does not, therefore, violate the Equal Protection Clause of the Fourteenth Amendment.