HENRICO PROFESSIONAL FIRE-FIGHTERS ASSOCIATION, LOCAL 1568, on its own right and as representative of its present and potential members; Richard A. McClure, in his own right and as President of the Henrico Professional Firefighters Association, Local 1568, Appellants,

v.

The BOARD OF SUPERVISORS OF HENRICO COUNTY; Eugene T. Rilee, Jr., in his capacity as Chairman of the Board of Supervisors of the County of Henrico; Charles M. Johnson, in his capacity as Vice Chairman of the Board of Supervisors of the County of Henrico; George W. Jinkins, Jr., in his capacity as member of the Board of Supervisors of the County of Henrico; Robert N. Johnson, in his capacity as member of the Board of Supervisors of the County of Henrico; Victor W. Kreiter, Jr., in his capacity as member of the Board of Supervisors of the County of Henrico; Frank A. Faison, in his capacity as County Manager of the County of Henrico; Martha C. Harwood, in her capacity as Administrative Assistant for Board Affairs, Appellees.

No. 80–1394.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1980.

Decided May 12, 1981.

Michael S. Shelton, Richmond, Va. (Cohen, Abeloff & Staples, P.C., Richmond, Va., on brief), for appellants.

William G. Broaddus, County Atty., Richmond, Va. (John L. Knight, Michael K. Jackson, Asst. County Attys., Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, INGRAHAM,* Senior Circuit Judge, and MURNAGHAN, Circuit Judge.

MURNAGHAN, Circuit Judge:

The case presents the question whether a government board that routinely permits individuals and representatives of organizations to present their views to it during regularly scheduled public meetings on any matters on which the board is empowered to act, may, through a single exception to the otherwise general rule, constitutionally prevent a representative of an association of its employees from presenting to it the collective views of its members solely because the speaker appears in the guise of a representative of an association of employees. Because the restriction imposed by the Board of Supervisors of Henrico County, Virginia ("Board" or "County"), denied, in the first place, the Henrico Professional Firefighters Association ("Association") and, in the second place, its members, the equal protection of the laws in exercising First Amendment rights of speech, association, and petition, and did so solely on the basis of the identity of the speaker as a representative of a public employee association, we reverse.

I.

The Association is an organization of firefighters whose members are employed by the defendant Board of Supervisors.[1]

---

* Honorable Joe M. Ingraham, Senior Circuit Judge from the Fifth Circuit, sitting by designation.

1. "Absent express statutory authority, local governments in Virginia are prohibited by state law from recognizing a labor organization as the exclusive representative of a group of public employees, and hence from negotiating collective bargaining contracts with such organizations." *O'Brian v. Leidinger*, 452 F.Supp. 720, 722 (E.D.Va.1978). *See Commonwealth v. County Bd. of Arlington Co.*, 217 Va. 558, 232 S.E.2d 30 (1977). However, local government agencies in Virginia may legally enter into "discussions" concerning various working conditions with representatives of public employee

The Board regularly provides opportunities for members of the public, including representatives of organizations, to address it on matters of municipal concern to the citizen or organization. However, it has generally enforced an exception, as a matter of policy, for any presentation on behalf of a group of its employees.

On March 16, 1979, the President of the Association, Captain Richard A. McClure, requested permission to speak to the Board concerning "the County's handling of 'heart lung' disability claims by firefighters." The Board, because of its policy, refused to permit McClure to speak on behalf of the Association or on behalf of any County employee other than himself, although it agreed to permit him to speak as an individual on his own behalf.

The Association filed suit under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, charging First Amendment and Equal Protection violations and asking for declaratory and injunctive relief. The district court granted defendant's motion for summary judgment. We agree that the record contained no material factual dispute, and that summary judgment was in order. However, we have concluded that the Association, rather than the Board, should have prevailed.

The policy enforced by the Board of Supervisors permits any individual, including any employee, to speak, but refuses the same opportunity to a chosen representative of an employee association. The Board regularly allows other organizations not purporting to act on behalf of employees to present their views, but adamantly refuses employee associations the right to appear on any subject.[2] Thus, the Board discriminates in its treatment of the Association because of its *status* as an association—an association representing employees. Accordingly, we are called upon to determine whether the Board may, consistent with the First Amendment and the Fourteenth Amendment Equal Protection Clause, treat the Association differently, simply because of its status as an association composed of public employees.

As a point of departure, we note the limited nature of the question before us. We do not have a case in which a governing board has uniformly and completely closed off all presentations or debate. Considerations of efficiency may sometimes require governmental bodies to confine debate at public meetings to certain narrowly defined subjects, or to close off debate entirely.[3]

---

organizations. *Reports of the Attorney General of the Commonwealth of Virginia* (1974–75) at 78; *id.* (1969–70) at 231. Thus, while a municipality may not confer exclusive bargaining rights upon a particular union absent statutory authority, it may discuss employment matters with representatives selected by its employees.

2. For example, the Board admits that its rules would permit an association of trash haulers to appear before it to speak about the County's policy of trash removal. At oral argument, the following exchange took place:

Q: Let's suppose that an issue regarding trash removal is under consideration by the board. Suppose there is an association of trash removal companies. They wouldn't be employees. They'd be independent contractors and entrepreneurs, businessmen. And on this matter someone wants to come forward and address the board on behalf of the association of trash removers of Henrico

County. Would he be allowed to come forward and speak only in his individual capacity or would he be able to speak on behalf of the association?

A. I think I will have to answer that question, Judge, that he would be permitted to speak on behalf of the association of businessmen who were concerned with the implementation of a legislative responsibility of the county to pick up trash.

3. In *Madison Joint School District v. Wisconsin Employment Rel'ns Comm'n*, 429 U.S. 167, 175 n.8, 97 S.Ct. 421, 426 n.8, 50 L.Ed.2d 376 (1976), the Court stated that "[p]lainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." Long ago Justice Holmes opined that the "Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

Moreover, we are not confronted with a situation in which representatives of all organizations, corporations and associations have been indiscriminately banned from the podium. We have no occasion to express an opinion on the constitutionality of a rule which permits the floor only to individuals, and is thus nondiscriminatory as between representative bodies. *But see First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). The sole question we are called upon to decide is whether a board that regularly opens its meetings for comment by individuals and by representatives of associations may enforce a single exception, which denies the opportunity to be heard to a representative of an employee association.

## II.

■ When governmental action deprives a person or organization of the right to communicate its views, but at the same time allows other persons or organizations to speak, the Supreme Court sometimes analyzes the case under the First Amendment, as in *Bellotti, supra,* and sometimes under the Equal Protection Clause of the Fourteenth Amendment. *See, e. g., Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Governmental action permitting some to speak, but denying the opportunity to others, raises an "equal protection claim . . . [that] is closely intertwined with First Amendment interests." *Mosley, supra,* 408 U.S. at 95, 92 S.Ct. at 2289. Analyzing the situation in Henrico County in terms of *Mosley* and *Bellotti,* the challenged policy deprives the Association of the equal protection of the law in its exercise of First Amendment freedoms. The governmental action, there-fore, may be claimed to infringe the equal protection component of the First Amendment. *See* Karst, *Equality as a Central Principle in the First Amendment,* 43 U.Chi. L.Rev. 20 (1975).

■ In any event, under either the First or the Fourteenth Amendment, the determination that a fundamental interest in speech has been abridged requires the government in cases such as the one at hand to advance a compelling justification for denying a particular person or entity the opportunity to speak.[4] Accordingly, we shall first examine the nature of the Association's claim, and then address whether the County's asserted justifications are sufficient to overcome the Association's right to nondiscriminatory treatment in the area of First Amendment interests.[5]

■ The Supreme Court has long held that public employees may not "be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public [institutions] in which they work." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The First Amendment rights of public employees includes the right to wear political messages during work, *Kelly v. United States Postal Service*, 492 F.Supp. 121 (S.D.Ohio 1980), to protest internal employment practices and present petitions to their government employer, *Jannetta v. Cole*, 493 F.2d 1334 (4th Cir. 1974), and to present to their employer at a public meeting their individual or representative views. *Madison, supra; Princeton Educ. Ass'n v.*

---

4. Where fundamental rights are involved, the state must meet a more exacting standard of scrutiny than that employed where, e. g., economic benefits are at stake. *Compare Mosley, supra,* 408 U.S. at 101, 92 S.Ct. at 2293, *with City of Charlotte v. Local 660, International Ass'n of Firefighters,* 426 U.S. 283, 286, 96 S.Ct. 2036, 2038, 48 L.Ed.2d 636 (1976).

5. We note that the Board's practice governs "speech and conduct in the future . . . and as such it is the essence of prior restraint." *Madi-son, supra,* 429 U.S. at 177, 97 S.Ct. at 427. Any policy of prior restraint bears a heavy burden against its constitutional validity. *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971). *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556–57, 95 S.Ct. 1239, 1245–46, 43 L.Ed.2d 448 (1975) (denial of the use of an auditorium for production of musical "Hair" constitutes a prior restraint).

*Princeton Bd. of Educ.*, 480 F.Supp. 962 (S.D.Ohio 1979).[6]

In *Madison*, the Court held that a public employee had a constitutional right to address his employer at a public meeting even on matters then pending in collective bargaining negotiations. In that case, the Board of Education conducted a regularly scheduled open meeting during which it heard discussion concerning currently pending labor negotiations between the Board and the teachers' union. After the union presented its views, and over the union's objection, a nonunion teacher representing 72 others spoke in opposition to a union shop clause proposed for the new contract. Subsequently, the Wisconsin Employment Relations Commission determined that the Board had committed an unfair labor practice by permitting the dissident to speak because such speech constituted "negotiations" with someone other than the exclusive bargaining agent. However, the Supreme Court held that the speech by the nonunion teacher did not constitute "negotiation" with the Board. The dissident "addressed the school board not merely as one of its employees but also as a concerned citizen, seeking to express his views on an important decision of his government." *Id.* at 174–75, 97 S.Ct. at 425–26. Accordingly, the dissident along with "other teachers and citizens [had] a protected right to communicate with the board." 429 U.S. at 175 n.7, 97 S.Ct. at 426 n.7.

Attempting to distinguish *Madison* from the present situation, the County contends that *Madison* involved the denial of an *individual's* free speech rights, whereas here it is an *association* whose speech is extinguished. However, the speaker in *Madison* represented a committee of 72 other employees. Thus, the County's attempted distinction carries little force.

■ Moreover, the Supreme Court has more recently ruled that government may not assign as its reason for prohibiting speech the identity of the speaker as a corporation or association. In *Bellotti, supra*, the Court held that Massachusetts could not constitutionally forbid a corporation, merely because of its status as a corporation, from expressing itself by expending funds to influence the outcome of a referendum.[7] The *Bellotti* Court ruled that the question was "not whether corporations 'have' First Amendment rights" but

> whether the corporate *identity* of the speaker deprives this proposed speech of what otherwise would be its clear entitlement to protection.... If the speakers here were not corporations, no one would suggest that the State could silence their proposed speech.... The inherent worth of the speech in terms of its capacity for informing the public *does not depend upon the identity of its source*, whether corporation, *association, union*, or individual.

435 U.S. at 776–78, 98 S.Ct. at 1415–1416 (emphasis added and quotation reordered). By the same token, the question before us is not so much whether the appellant has First Amendment rights, but rather whether the status of the speaker, an employee association, may be invoked as the reason for denying the Association the opportunity

---

6. The right to select a spokesman to advocate a group's common views is implicit in the confluence of speech and associational rights guaranteed by the First Amendment. *Brotherhood of Railroad Trainmen v. Virginia State Bar*, 377 U.S. 1, 6, 84 S.Ct. 1113, 1116, 12 L.Ed.2d 89 (1964) ("The right of members to consult with each other in a fraternal organization necessarily includes the right to select a spokesman from their number who [can] be expected to give the wisest counsel"); *NAACP v. Button*, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963) (First Amendment associational rights of the members of the NAACP violated by a state prohibition which prevented the As-

sociation from representing the views of its membership by providing legal assistance to persons claiming racial discrimination). *See generally The Supreme Court, 1977 Term, Corporate Political Expression*, 92 Harv.L.Rev. 163 (1978).

7. In *Buckley v. Valeo*, 424 U.S. 1, 39–59, 96 S.Ct. 612, 644–654, 46 L.Ed.2d 659 (1976), the Court had earlier held invalid expenditure limitations upon individuals and groups in political campaigns because limiting the expenditure of money in a campaign was tantamount to limiting speech.

to present views which the Board of Supervisors would listen to if presented by others. And, like the situation present in *Bellotti*, the inherent worth of the Firefighters Association's speech in terms of informing the public or the Board of Supervisors does not depend upon the *identity* of its source. Thus, the Board may not discriminate against the speech merely because its source is an employee association. *See also Eastern RR. Presidents' Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–530, 5 L.Ed.2d 464 (1961) (construing the Sherman Act's prohibition on combinations in restraint of trade so as not to apply to lobbying by an association of businesses because a contrary construction might invade the right to petition secured to associations by the First Amendment); *Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C.Cir.1968) (Burger, J.) (freedom of petition extends to "every person *or group* engaged . . . in trying to persuade [legislative action]") (emphasis added).

### III.

Although the Board's action interferes with the exercise of the Association's and also of its members' speech, association and petition rights, the Board might still prevail if it could demonstrate a compelling justification for burdening those First Amendment interests. The Supreme Court has held that a public employer may have interests in regulating the speech of its employees that differ from its interests in regulation of speech of the citizenry at large. *Pickering, supra*, 391 U.S. at 568, 88 S.Ct. at 1734. Nonetheless, any infringement on employees' First Amendment rights must be carefully tailored to achieve legitimate state objectives and no more. *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); *Mosley, supra*, 408 U.S. at 101. Particularly where, as here, no claim is made that the proposed

communication would interfere with the actual working time of the employee, or with other employees' work,[8] the Board's rationale for discriminating against an association because public employees comprise its membership must be carefully examined.

In justifying its actions, the Board first contends that it may discriminate against employee groups that come before it because government-employee relations fall outside the ambit of First Amendment protections. In *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) (per curiam), the Court decided that a state highway commission was not required to accept the arbitration efforts of a union or respond to the union's representative in the union's attempt to pursue a particular labor grievance brought against the Commission.[9] In that case, a member of a state employees union who held a labor grievance against the employer, a State Highway Commission, customarily would file a complaint with the union. In turn, the union would forward the letter to the Commission along with its own letter stating it represented the employee and requesting a meeting. However, citing its policy of acting only upon complaints if filed by the individual employee, the Commission ignored the union's letters. Thereafter, employees filed complaints directly with the Commission, which it responded to. The union was permitted to represent each employee at subsequent meetings with the employer. 441 U.S. at 463–64 n.1, 99 S.Ct. at 1827 n.1. The Court determined that the Commission committed no First Amendment violation by ignoring the union's initial arbitration efforts. The union had no First Amendment right to compel the local government "to recognize the association and bargain with it," 441 U.S. at 465, 99 S.Ct. at 1828.

---

8. Rather, the implication is all the other way. In the case of temporal conflict between working hours and the time of the meeting, the conflict is lessened, not aggravated, by permitting the Association to speak on behalf of the employees.

9. The union had not obtained exclusive rights to represent employees in grievance proceedings with the State Highway Commission.

In the present case, the Board urges that *Smith* permits a local government to refuse the entreaties of an employee association to "represent" its members concerning employment matters. However, contrary to the Board's argument, *Smith* itself affirmed the right of labor associations "to engage in *advocacy* on behalf of their members." 441 U.S. at 464, 99 S.Ct. at 1827 (emphasis added). *Smith* held only that a labor union had no First Amendment right to compel a governmental body to *negotiate* with it concerning labor grievances. As Justice John Paul Stevens, while still a judge on the Court of Appeals, said in the context of public employer/employee relations:

> The First Amendment protects the right to *advocate*, either individually or *through an association*, and also the *association's* right to engage in advocacy on behalf of its members. A State may not invade that constitutional protection . . . by a general advance prohibition against certain forms of advocacy. . . .

*Hanover Township Federation of Teachers, Local 1954 (AFL–CIO) v. Hanover Community School Corp.*, 457 F.2d 456, 459–60 (7th Cir. 1972) (citations omitted; emphasis added).

Consequently, the Board's position in the instant case is defective because it equates advocacy with negotiation. The present case involves the right of the Association to speak on behalf of its members, not to force the Board to arbitrate or negotiate with it concerning labor grievances.[10] *See Madison, supra*, 429 U.S. at 174, 97 S.Ct. at 425 (a speech given by a representative of non-union teachers to their employer concerning a matter then being debated in collective negotiations between the employer and the union does not constitute "negotiation" with the employer).

Similarly, although here the subject of the Association's contemplated speech apparently concerns complaints of firefighters about the County's handling of "heart-lung" disabilities, the mere presentation of the Association's position on that issue does not constitute "negotiation" or "grieving." No direct back-and-forth dealing is contemplated here. Nor has the Association demanded that a special grievance meeting be set up for it. The Association claims no right to be the employees' exclusive representative, or to be designated the employees' agent for resolving particular employer-employee disputes. "Representation" in the labor context means, of course, something more extensive, more exclusive and more enduring than the simple "representation" involved in standing up to speak on another's behalf. Although "the First Amendment is not a substitute for the national labor relations laws," *Smith, supra*, 441 U.S. at 464, 99 S.Ct. at 1827, it is even more imperative that the labor relations laws, particularly when promulgated by the self-interested public employer, cannot substitute for the First Amendment.[11]

---

**10.** It is of importance to observe that the Commission did not refuse to *receive* the union's communications. It did not act on them, it simply ignored them: "[a]ll that the Commission has done in its challenged conduct is simply to ignore the union." *Smith, supra,* 441 U.S. at 466, 99 S.Ct. at 1828. The Henrico Firefighters Association only asks that they be heard. It does not demand a response—that the Board of Supervisors, having heard, pay any attention or take any action. Hence in *Smith,* the equivalent of what the Association now seeks *was accorded,* and the case deals with a further step not involved in the present case at all.

We have the Association insisting on the right to deliver the message, but not demanding a reply. In *Smith,* there was no opposition by the State Highway Commission to delivery of the messages. The case dealt exclusively with whether the Highway Commission had a constitutional duty to reply to the union. "But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." *Smith, supra,* 441 U.S. at 465, 99 S.Ct. at 1828. The Firefighters Association demands, in this action, no response, no recognition as a bargaining agent. It only asks to be allowed to make a presentation and, of course, nothing will preclude the Board of Supervisors from not responding to the presentation.

**11.** "Surely no one would question the absolute right of the [employees] to consult among themselves, hold meetings, reduce their views to writing, and communicate those views to the public generally in pamphlets, letters, or ex-

■ In attempting further to justify its discriminatory refusal to permit a representative of the employee association to speak, the Board contends that it has a longstanding policy of dealing individually with its employees, and not through intermediaries. But the practice of continuing to bargain individually with its employees is not frustrated by merely listening, in the same way that the Board would listen to the trash disposers' representative, to the Association as the representative of the firefighters. Allowing the representative to speak for the Association does not deprive the public employer of its opportunity to negotiate individually with its employees. Listening involves no direct dealing with the representative and does not require the Board to respond. Any lessening of the Board's ability to deal directly with individual workers is minimal at best.[12]

■ The defendant Board also contends that its meetings do not constitute a public forum and therefore that it may restrict whom it allows to speak.[13] How-

pressions carried by the news media. It would strain First Amendment concepts extraordinarily to hold that dissident teachers could not communicate those views directly to the very decisionmaking body charged by law with making the choices raised by the contract renewal demands." *Madison, supra,* 429 U.S. at 176 n.10, 97 S.Ct. at 426 n.10.

12. We recognize the possibility—or even the probability—that the Association may not so much be seeking an opportunity to present its members' views as it is trying to establish its legitimacy as a spokesman for the firefighters in the firefighters' eyes or in those of the Board. However, a speaker's motivation for expression is irrelevant in First Amendment analysis. *Eastern RR. Presidents' Conf., supra,* 365 U.S. at 138–39, 81 S.Ct. at 530–31. *See also Collin v. Smith,* 578 F.2d 1197 (7th Cir. 1978), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978) (invalidating Village of Skokie ordinance directed at Nazis, which forbade dissemination of religious materials promoting hatred by reason of race or religion).

13. The Firefighters Association has pressed upon us the argument that the Board, by regularly providing opportunity to members of the public, including nonemployee associations, to address it, created a limited public forum which it might not then deny to a speaker on the basis of its identity as an association of employees. Numerous cases have utilized the expository concept of a "public forum" in holding that the government may not deny the use of public facilities to groups whose activity or identity the state finds objectionable. Generally, the cases turn on the weight of the asserted governmental interest in suppressing speech, not on the nature of the place where speech occurs. *See, e. g., Madison, supra,* 429 U.S. at 175, 97 S.Ct. at 426 ("[w]here the state has opened a forum for direct citizen involvement, it is difficult to find justification for excluding teachers who make up the overwhelming proportion of school employees and who are most vitally concerned with the proceedings"); *Princeton Educ. Ass'n, supra,* 480 F.Supp. at 968. Even

in those cases which deny all speakers certain forms of First Amendment access due to the government's overriding interest in a particular place, *see, e. g., Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (permitting the military to impose special restrictions on First Amendment activity on military base); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (permitting a municipality to exclude political advertisements from city-owned buses), there is no indication that particular persons or groups were singled out for exclusion because of their identity or status. In general, therefore, the government may not discriminate on the basis of the content of expression. However, it "may adopt reasonable time, place, and manner regulations, which do not discriminate among *speakers* or ideas, in order to further an important governmental interest unrelated to the restriction of communication." *Buckley v. Valeo, supra,* 424 U.S. at 18, 96 S.Ct. at 634 (emphasis added).

Where government action has been found to "create" a "public forum," the effect of such a finding has been to prevent discrimination among speakers or speech. For example, in *National Socialist White People's Party v. Ringers,* 473 F.2d 1010, 1014 (4th Cir. 1973) (en banc), we declared that a School Board's repeated exercise of its discretion to rent a high school auditorium during nonschool hours constituted a "partial dedication as a forum for the exercise of first amendment rights." We reasoned that making the school building—normally not open to the public at large—available to some groups required that denial of access to the building be made on the basis of regulations blind to the identity of the speaker or the content of the speech. And in *Princeton Educ. Assn. v. Princeton Bd. of Educ., supra,* the court held that a school board that regularly permitted members of the public to speak at its meetings thereby created a public forum from which it could not exclude teachers and nonresidents. Thus, the public forum cases support the proposition that, regardless of the place where speech occurs, government may not dis-

ever, the generalization that there is no absolute right to speak to a governmental body during its meetings obscures the issue. Here it is unnecessary to decide whether an association of employees has a constitutionally protected petition right of access to present its views to its government employer. It is sufficient merely to say that once a meeting has been generally opened to presentation by the public, First and Fourteenth Amendment protection does extend to an association whose exclusion from speaking is predicated solely on the basis of its status as an organization of employees.[14] Thus we reject the view that because a governmental body may sometimes close its doors entirely to the public or limit discussion to certain subjects only, it may deny access to an association when it welcomes any individual to speak, and allows representatives of groups other than public employees to be freely heard.

■ Finally, that the proposed communication happens to involve a local problem rather than a "public issue," and advances "economic" rather than "political" interests, does not remove the shield of the First Amendment. As has been stated by Chief Judge Haynsworth, it is no answer to "equate the petition here involved with internal bickering between an employer and

his employee. The First Amendment is not limited in its protection to issues of great social and political impact, . . . and [the Association's] petition should not be denied such protection simply because it deal[s] with matters of a local nature." *Jannetta v. Cole, supra*, 493 F.2d at 1337 n.5.[15] "The grievances for redress of which the right of petition was insured" are not confined to religious or political causes, but include other fields of human interest, including business, labor, or economic activity. *Thomas v. Collins*, 323 U.S. 516, 531, 65 S.Ct. 315, 324, 89 L.Ed. 430 (1945).

■ In summary, we hold that representatives of a public employee association may not be denied the equal protection of the First and Fourteenth Amendments when (1) a public meeting has been generally opened for discussion by individuals of the topic the association wishes to address, (2) nonemployee associations are welcomed and allowed to discuss topics of interest to them, and (3) any topic is deemed relevant if it concerns matters with which the body holding the meeting has power to deal. Government may not discriminate among those it will hear on the basis of the speaker's status as a labor organization, rather than an individual employee, or because the

criminate among speakers on the basis of their status (i. e., identity) or the content of their speech.

In the instant case, that the Board of Supervisors regularly opens its meetings to comment by citizens and organizations on all subjects connected with County business supports the Association's contention that the portions of the meeting period devoted to such purposes have been dedicated as a limited public forum from which the Board may exclude no speaker. However, as we hold that the Board may not constitutionally deny the floor to the Firefighters Association purely on the basis of its status as an employee organization, we do not need to reach the broader issue of whether all groups must be permitted to address the Board.

14. Even assuming the Board may constitutionally exclude all persons from speaking before it, the "greater includes the lesser" argument (i. e., if the Board may exclude all members of the public it may admit only those it cares to hear for whatever reasons) has been rejected in a variety of contexts. For example, the Supreme Court has held that, though there may be no "right" to a valuable government benefit, the

receipt of it may not be conditioned on conformity to practices which amount to a limitation on free speech. *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). *See Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (while state has no duty to provide unemployment benefits, it may not cut off such benefits on the basis of a citizen's exercise of religious belief); *Keyishian v. Board of Regents*, 385 U.S. 589, 605–06, 87 S.Ct. 575, 684–685, 17 L.Ed.2d 679 (1967) ("the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected").

15. "[T]he First Amendment does not protect speech and assembly only to the extent it can be characterized as political. 'Great secular causes, with small ones, are guarded.' " *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 223, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967), quoting *Thomas v. Collins, supra*, 323 U.S. at 531, 65 S.Ct. at 323.

particular association is composed of public employees.

At the same time, allowing Captain McClure an opportunity to speak means only that. It does not call for "recognition" as that term is used in the labor relations context. It does not compel the Board to bargain with the Association. It does not even require that the Board pay attention. We only decide that it was incumbent on the Board to afford him, as a representative of the Association and its members, the right to speak.

*REVERSED with directions to enter a summary judgment, including appropriate injunctive relief, in favor of Appellants in accord with the views expressed in this Opinion.*