The UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, and United Steelworkers of America, Local Union No. 7044,

v.

John R. BLOCK, Secretary of the United States Department of Agriculture; Allan C. Nickels, Mountain Plains Regional Director of the Family Nutrition Program, United States Department of Agriculture; James Ellenbecker, Secretary of the South Dakota Department of Social Services; Judith Thompson, Program Administrator, South Dakota Office of Food Stamps.

Civ. No. 82–5078.

United States District Court, D. South Dakota, W.D.

Dec. 23, 1982.

Dennis W. Finch, Finch & Viken, Rapid City, S.D., for plaintiffs.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., Douglas E. Kludt, Asst. Atty. Gen., Pierre, S.D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

In this case, the United Steelworkers of America, and its Local No. 7044, (hereinafter "Union"), challenge on several grounds the interpretation given by the United States Department of Agriculture (USDA) to its regulations under the Food Stamp program concerning the ineligibility of persons "on strike." 7 U.S.C. § 2015(d)(4) provides, *inter alia,* "... a household shall not participate in the food stamp program at any time that any member of such household, not exempt from the work registration requirements of paragraph (1) of this subsection, is on strike as defined in section 142(2) of Title 29, because of a labor dispute (other than a lockout)...." At issue is the USDA's interpretation of 7 C.F.R. § 273.1(g)(1), which provides:

> (g) Strikers. (1) For food stamp purposes, a striker shall be anyone involved in a strike or concerted stoppage of work by employees (including a stoppage by reason of the expiration of a collective-bargaining agreement) and any concerted slowdown or other concerted interruption of operations by employees. Any employee affected by a lockout, however, shall not be deemed to be a striker. Further, an individual exempt from work registration in accordance with § 273.-7(b), other than those exempt solely on the grounds that they are employed, who may go on strike shall not be deemed to be a striker.

On June 1, 1982, following the expiration of the collective bargaining agreement covering union members at the Homestake

Mine, the Union called a strike at the Mine. A majority of the members of the Union local voted in favor of the strike. On that same date, and in fact, immediately upon commencement of the strike, the management of the Mine closed all operations. The Mine was closed either because management wished to avoid possible violence, or because the strike left insufficient qualified personnel to continue operations.

Following the strike, many Mine employees applied for food stamps at the South Dakota Department of Social Services offices in Deadwood and Sturgis, South Dakota. The defendant administrators of the Department requested directions from the USDA concerning the eligibility of Mine employees for food stamps. The Regional Office of the USDA advised the Department of Social Services that strikers were generally ineligible to participate in the food stamp program. This conclusion obviously precluded any eligibility on the part of Union members. The USDA added, however, that nonunion workers would be considered "locked out," and if otherwise eligible, could receive food stamps. This direction apparently was based upon the USDA's conclusion that the direct cause of the unemployment of nonunion workers was not their participation in the strike. Rather, the unemployment of nonunion workers resulted from the closure of the Mine—which occurred immediately after the Union called the strike. Thus, nonunion workers were given no opportunity voluntarily to leave their jobs and to go on strike. They were laid-off by the Mine immediately after the strike was called and the Mine closed. For this reason, nonunion workers at the Mine were considered locked out, and therefore eligible for food stamps. Accordingly, defendants asked Mine workers who applied for food stamps whether they were members or non-members of the Union. Members generally were denied food stamps, and non-members, if otherwise eligible, received them.

The Union seeks both declaratory and injunctive relief. The Union contends that the USDA unlawfully discriminates on the basis of union membership in its interpreta-tion of 7 U.S.C. § 2015(d)(4) and 7 C.F.R. § 273.1(b)(1). In several counts of its Complaint, the Union asserts that the USDA denied food stamps on the basis of union membership, in violation of Union members' rights under the first amendment (freedom of association), and the equal protection clause of the United States Constitution. The Union further contends on these same grounds that defendant state administrators are liable under 42 U.S.C. § 1983. Finally, plaintiffs assert that the USDA's interpretation of the Food Stamp Act in this case violates their rights under the Labor Management Relations Act, 29 U.S.C. § 157. The merits of the case are before this Court on the Union's motions for declaratory and injunctive relief. Defendants advance several arguments in opposition to the motions, the first of which is that the plaintiffs have failed to present a justiciable case or controversy.

## I.

Article III of the Constitution limits the judicial power of the United States to the resolution of "cases" and "controversies." As an incident to this requirement, the U.S. Supreme Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). At "an irreducible minimum, Art. III, requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, (cites omitted), and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id.* 102 S.Ct. at 758. Ordinarily a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. But an organization, such as a union, has standing to assert the constitutional rights of its members. *See, Arkansas State Highway Em-*

*ployees Local 1315 v. Kell,* 628 F.2d 1099 (8th Cir.1980); *CIBA–GEIGY Corp. v. Local #2548, United Textile Workers,* 391 F.Supp. 287 (D.R.I.1975).

█ In this case, the Union contends that defendants' interpretation and application of Section 2015(d)(4) actually injured or threatens future injury to the constitutional rights of union members. First, the Union asserts that defendants denied food stamps "on the basis of union membership," thereby burdening the members' right to freedom of association. One union member stated that defendants offered food stamps to any member who signed a written resignation of union membership, acknowledged by the Union, together with a promise not to rejoin the Union. (Affidavit of William Maddocks.) Additionally, the Union contends that nonmembers may decline to exercise their fundamental right to belong to the Union and to participate in its activities, because by doing so they would become ineligible for food stamps. Thus, the Union concludes that members suffer actual injury to their associational rights by defendants' "offering federal benefits as an inducement to forego union membership." These factual allegations may be adequate to confer standing to invoke federal jurisdiction. But to obtain a judgment and remedy, the Union must establish the truth of these allegations. Through this rule Article III controls not only who may have access to federal courts at the threshold of the litigation, but also who may obtain a judgment. *Legal Aid Society of Alemeda County v. Granny Goose Foods, Inc.,* 608 F.2d 1319, 1320 (9th Cir.1979); *N.A.A.C.P., Boston Chapter v. Harris,* 607 F.2d 514 (1st Cir.1979).

This Court finds and concludes that defendants did not offer food stamps to persons who relinquished union membership. Instead, when some members offered to quit the union, defendants told them that they still would be ineligible for food stamps. Defendants used June 1, 1982, the date the strike began, as a cut-off date for determining which Mine workers were "on strike." As union membership aided that determination, any person who was a union member on that date was found to be on strike, regardless of any offer on their part to relinquish union membership after that date. Furthermore, the Union does not challenge the constitutionality of section 2015(d)(4), and does not oppose the provisions denying benefits to "strikers". It agrees that all union members at the Mine were on strike and were not entitled to food stamps. Since this Court finds that present members were not offered food stamps as an inducement to relinquish union membership, and were properly denied food stamps, union members suffered no "distinct" and "palpable" injury to their associational rights *as a result of* defendants' application of section 2015(d)(4) *against union members.*

As in *N.A.A.C.P., Boston Chapter. v. Harris,* plaintiffs here seek only equality of treatment of members and nonmembers of the union, with respect to federal benefits. In plaintiffs' view,

> "[e]quality would be achieved—if only the equality of equal misery—if [benefits] were denied to everyone .... The difficulty with this approach is that a mere abstract denial of equal opportunity does not constitute injury in fact. A general denial of equal opportunity does not confer standing on a particular individual unless that individual would have had access to the benefit at stake in the absence of the discrimination." 607 F.2d at 520.

In this case members would properly be denied food stamps in the absence of defendants' classification of applicants as members or nonmembers of the union. In challenging the classification as it applies to present members, therefore, this Court concludes that the Union failed to establish an injury in fact, which was caused by defendants' conduct, and which would be redressed by granting the relief requested.

The Union also challenges defendants' use of the member/nonmember classification for the reason that nonmembers may choose not to join the union because of their fear of losing food stamp eligibility.

The Union asserts that the associational rights of the members are injured by defendants' "offering federal benefits as an inducement to forego union membership." However, injuries such as the potential loss of members are speculative. *N.C.A.A. v. Califano*, 622 F.2d 1382, 1387 (10th Cir. 1980). "A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged ... action, not that he can imagine circumstances in which he could be affected...." *United States v. SCRAP*, 412 U.S. 669, 688–689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). In this case, the Union failed to establish that it lost a single member, present or prospective, on account of defendants' application of section 2015(d)(4) to the strike at the Mine. And again, it is difficult to envision how the relief requested—denial of food stamps to all Mine workers regardless of their status as union members—would redress the injury or remove any alleged disincentive toward union membership. The same classes of persons could properly be denied or granted food stamps based upon considerations related to their status as "strikers," other than union membership. Accordingly, the Court finds and concludes that the Union has no standing to assert the claims set forth in the Complaint. *See also, Society Hill Civic Association v. Harris*, 632 F.2d 1045 (3rd Cir. 1980); *Peick v. Pension Benefit Guaranty Corp.*, 539 F.Supp. 1025 (N.D.Ill.1982). Nevertheless, even if the Union has standing to challenge defendants' application of section 2015(d)(4), its constitutional claims must fail.

## II.

■ A. *Freedom of Association.* The Union does not, and could not contend that the denial of food stamps to "strikers" violates union members' first amendment right to freedom of association. *See, Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Russo v. Kirby*, 453 F.2d 548 (2nd Cir.1971); Annotations, 63 A.L.R.3d 88, and 62 A.L.R.3d 314. Instead, it believes that this right was violated when

defendants denied and granted food stamps "on the basis of union membership."

The first amendment freedom to associate clearly extends to protect membership in a union. *Greminger v. Seaborne*, 584 F.2d 275 (8th Cir.1978). In this context, the freedom of association may be violated if the government discharges public employees solely for asserting their right to unionize; *Teamsters Public Employees Union Local No. 594 v. City of West Point, Neb.*, 338 F.Supp. 927 (D.Neb.1972); if government attempts to restrict the collection of union dues, *Hotel & Restaurant Employees, etc. v. Danzinger*, 536 F.Supp. 317 (D.N.J.1982); or generally, if government conditions the receipt of a public benefit upon the relinquishment of the freedom of association. *See generally, Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); cases cited, 16 Am. Jur.2d *Constitutional Law* § 536. The Union contends defendants violated this last principle.

Contrary to the Union's assertion, however, this Court finds and concludes that defendants did not deny food stamps to any person because of union membership. Defendants did not condition the receipt of food stamps upon nonmembership in the Union. Defendants utilized the distinction of member and nonmember as a means of determining and identifying ineligible "strikers." The distinction was relevant solely because of the unique facts of the Homestake strike. When the strike was called—and all union members were undisputably on strike—the Mine *immediately* closed. Defendants concluded that nonmembers were not given the time or the opportunity to join the strike, and thereby voluntarily become unemployed, *before* they were involuntarily unemployed by the closure of the Mine. For this reason, defendants treated nonmembers as though they were "locked out" and, therefore, eligible for food stamps. Defendants did not restrict the right of any person to quit or to join the Union, nor did they encourage any person to quit or to join the Union. Persons who offered to, or considered quitting

the Union were told that such a decision would not affect their eligibility for food stamps if they were union members on the day the strike was called. Defendants did not interfere with the Union's right to solicit members, to bargain collectively, or to engage in concerted activities. Defendants did not attempt to regulate the terms upon which a person became a union member. The record does not establish that a single member resigned from the union, or that any non-members relinquished their right to join the union, in order to receive food stamps.[1]

The Union concludes that the only constitutional construction of section 2015(d)(4) is one which would deem all members of a bargaining unit unemployed because of a strike, both members and nonmembers of the union, to be "on strike" for purposes of food stamp eligibility. This conclusion is based upon the Union's belief that nonmembers receive all the benefits of the collective bargaining agreement in effect at the Mine, and cannot otherwise be distinguished from union members within the bargaining unit. Nonetheless, there exist crucial distinctions between union members and nonmembers in a state which does not permit union security agreements in collective bargaining agreements. Nonmembers have not decided to join a union, have not had the opportunity to vote on a strike, and have not agreed to be bound by the decision of the union to go on strike. Thus, it is arguable that the Union's interpretation of section 2015(d)(4) would violate the first amendment right of nonmembers *not* to associate with the union or become a union member.

This Court concludes that defendants did not violate union members' rights under the first amendment when it determined the identity of ineligible strikers by reference to union membership. The burden, if any, upon associational rights, is incidental and minimal. The most that can be said of defendants' application of section 2015(d)(4) to the unique facts of this case is that reference to union membership may impair the effectiveness of the union. This type of impairment is not one that the first amendment prohibits. "[T]he first amendment imposes no duty on the state to engage in policies that will affirmatively assist a union to carry out its function and purpose." *Local 995, International Association of Firefighters v. City of Richmond*, 415 F.Supp. 325, 326 (E.D.Va.1976). This Court finds support for its conclusion on the first amendment claim in *Florida AFL–CIO v. State of Florida Dept. of Labor & Employment Security*, 676 F.2d 513 (11th Cir.1982). In that case, the union challenged on first amendment grounds a Florida statute which disqualified a claimant for unemployment benefits if "without good cause" he voluntarily leaves his employment or fails to accept other suitable employment. Under Florida's interpretation of the statute a claimant who leaves his employment or refuses to accept new employment solely because the employer is not covered by a collective bargaining agreement does so "without good cause." Although the statute was applied to the exclusive detriment of union members, the court held that there was no violation of the members' right of association. "The statute and regulations ... did not condition unemployment benefits upon non-membership in a union, nor did they burden membership in any way." *Id.* at 516.

B. *Equal Protection.* This Court has rejected the Union's claim that the challenged classification burdens the fundamental right to union membership or free association. Therefore, defendants' application of section 2015(d)(4) must meet only a relaxed standard of reasonableness to survive scrutiny under the Equal Protec-

---

1. The member-nonmember distinction was reasonable in this case because all members went on strike and all nonmembers were immediately forced off their jobs by the closure of the Mine. In other factual circumstances, this distinction would be less appropriate. For example, if the Mine had remained in operation, some nonmembers may decide to honor or participate in the strike, under circumstances which could render a nonmember of a union an ineligible "striker."

tion Clause. *See, City of Charlotte v. Local 660, International Association of Firefighters,* 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976). This "rational basis" test ordinarily is applied to social and economic legislation like the Food Stamp Act. Any classifications made in connection with this legislation must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose. *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). "Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Finally, such legislation or classifications are presumed to be rational and can be overcome only by a clear showing of arbitrariness and irrationality. *Hodel v. Indiana,* 101 S.Ct. at 2386.

Defendants provide several justifications for their use of the member-nonmember classification as a basis for identifying ineligible strikers under the unique facts of this case. These justifications are based upon the purposes of section 2015(d)(4), as set forth in the legislative history of the provision.

The current policy of allowing strikers to be eligible for food stamps has damaged the program's public integrity. Granting benefits to strikers can be seen as encouragement to workers to "wait out" management, rather than compromise. In many cases, public employees may receive food stamps even though the strikes in which they are participating are illegal.

·    ·    ·    ·    ·

It is maintained that households containing strikers should receive food stamp benefits because the reason for loss of income should not be a determining factor in deciding whether a household should be assisted, and that a striker denied food stamps may not have individually voted in favor of a strike. However, denying benefits (or denying increased benefits) to households containing members on strike is consistent with the underlying policy of tying receipt of food stamps to the ability and willingness to work, as exemplified by provisions requiring work registration, denying benefits to those voluntarily quitting a job without good cause, and allowing the establishment of workfare programs.

A person who leaves his job to go on strike has given up the income from the job of his own volition. A person making such a choice and participating in a strike must bear the consequences of his decision without assistance from the food stamp program. Public policy demands an end to the food stamp subsidization of all strikers who become eligible for the program solely through the temporary loss of income during a strike. Union strike funds should be responsible for providing support and benefits to strikers during labor-management disputes. S.Rep. 97–139 at 62, U.S.Code Cong. & Admin.News 1981, pp. 396, 452.

Thus, the parties in this case recognize at least three justifications for section 2015(d)(4): (a) To assure governmental neutrality in economic disputes between labor and management by removing any incentive for striking workers to "wait out" management; (b) To deny food stamps to individuals who voluntarily quit their jobs; (c) To reduce expenditures on the food stamp program by eliminating benefits for strikers, yet maintaining benefits for those able and willing to work.

Defendants' inquiry into union membership of applicants is rationally related to these legitimate objectives. Where an employer ceases operations at the place of employment immediately after a strike is called, and nonunion workers are not obligated to honor the strike, the direct cause of the unemployment of nonunion workers is the closure of the work place. While union members voluntarily chose to go on strike and to leave their jobs, nonunion workers at the Mine were involuntarily forced off their jobs by the actions of the employer. The loss of income to nonunion

workers which rendered them eligible for food stamps was not caused by voluntary participation in a strike. Thus, under these special circumstances inquiry into the status of a person as a member or nonmember of the union on strike is rationally related to the goal of the Act to deny benefits to strikers.[2] Even if the member/nonmember classification could not constitute the only factor in identifying "strikers." in other factual circumstances, defendants properly utilized the classification in this case. The Supreme Court upholds the validity of classifications made in social and economic legislation unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that [the government's] actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979). The Union failed to carry this heavy burden.

■ This Court has finally considered the Union's claim that defendants' application of section 2015(d)(4) "operates to restrain the members of the bargaining unit from union membership in violation of a central tenet of the federal law of labor relations." Contrary to this assertion, defendants' interpretation of the statute in this case does not contravene any of the policies or provisions of the Labor Management Relations Act of 1947, 29 U.S.C. § 157, or plaintiffs' rights under the Act. The denial of government benefits to strikers has been upheld in many other contexts. This Court can find no basis in this record for concluding that nonunion workers at the Mine should, as the Union urges, be considered "on strike." Section 2015(d)(4), and defendants' application of the statute in this case, do not restrict the exercise of any right to engage in concerted union activities, but instead reflect and implement Congress' policy not to subsidize those activities.

For the foregoing reasons, the Union failed to establish the factual basis for its claim for injunctive relief, *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981), and for declaratory relief. This Court, therefore, will deny plaintiffs' claim and dismiss the Complaint by separate order.

2. Granting food stamps to involuntarily unemployed, nonunion workers does not offend the policy of government neutrality in labor disputes. Nonunion workers may not be entitled to financial support from union strike funds.

Granting such workers food stamps, if they are otherwise eligible, does not create any incentives which may affect the strategy of either the union or management with respect to the resolution of the strike.