**LODGE 2424, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO**

v.

**The UNITED STATES.**

No. 172–76.

United States Court of Claims.

Oct. 19, 1977.

---

9. H.R.Doc.No.173, 89th Cong., 1st Sess., 1965, pp. 105–106.

William B. Peer, Washington, D.C., attorney of record for plaintiff; Barr & Peer, Washington, D.C., of counsel.

Lawrence S. Smith, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before COWEN, Senior Judge, DAVIS and KUNZIG, Judges.

COWEN, Senior Judge, delivered the opinion of the court:

Plaintiff brings this action to recover $80.33 of voluntarily allotted union dues, which the Government deducted from the wages of a former member of the union. The case is before us on the parties' cross-motions for summary judgment, there being no genuine issues of material fact in dispute. For the reasons set forth below, we grant defendant's motion for summary judgment and dismiss the petition.

The facts which give rise to this controversy are relatively simple. Plaintiff, a union, is the sole bargaining agent for a group of Government wage grade employees at the Aberdeen Proving Ground (APG), Aberdeen, Maryland. The union is supported by membership dues, collected through a system of "voluntary allotments" by which the employees in the bargaining unit agree in writing to have a specified sum deducted by the Government from their paychecks. The Government collects all of the members' dues in one lump sum each payday and transmits the sum directly to the union, as provided in Article XXXIX of the Collective Bargaining Agreement between the Government and the Union (hereafter, Bargaining Agreement):

*Section 2.* The Employer will deduct Union dues from the pay of those eligible employees who voluntarily authorize such deductions \* \* \* who are members of the Union \* \* \* and who are employed within the Unit(s) of wage grade employees certified by the US Department of Labor \* \* \* as exclusively represented by the Union \* \* \*.

\* \* \* \* \* \*

*Section 9.* The Employer's payroll office will transmit to the Financial Secretary

or Secretary-Treasurer of the Union not later than three (3) workdays after each payday the following:

    \*    \*    \*    \*    \*    \*

b. A check drawn on the Treasurer of the United States and made payable to the Union in an *amount equal to the grand total of all such deductions* less two cents for each individual deduction made. [Emphasis added.]

Among plaintiff's members was one Robert L. Wright, an APG employee. As a member of the collective bargaining unit, Mr. Wright had given his written consent to have the Government deduct $2.77 from his biweekly wages in accordance with the above-quoted procedure. The deduction was always properly made and paid by defendant so long as Mr. Wright was a member of the bargaining unit. However, on October 19, 1971, Mr. Wright was promoted to a position not covered by the Bargaining Agreement. After that time, the Government was no longer authorized to make dues deductions as it had been doing. Article XXXIX, Section 7 of the Bargaining Agreement makes this clear:

*Section 7.* An employee's voluntary allotment for payment of his regular Union dues will be terminated by the Employer's payroll office with the beginning of the first pay period following the pay period in which any of the following occur:

    \*    \*    \*    \*    \*    \*

b. Transfer of the employee authorizing dues deduction outside of the unit (Except for temporary promotion or detail).

However, when Mr. Wright was promoted out of the bargaining unit, the Government failed to end the dues deduction and continued to make the payments to the plaintiff union. The union did not notify the Army payroll office of Mr. Wright's change in status, although it was required to do so under the Bargaining Agreement.[1] The union continued to retain the excess dues and did not offer to return them to the Government.[2]

In November 1972, the Government apparently realized the error of its ways and ceased making the dues deductions from Mr. Wright's wages. It then determined the amount that had been incorrectly paid to the union and deducted the sum ($80.33) from its December 1972 payment to the union covering the aggregate of employee dues deductions for that month. The union objected to this "recoupment" procedure. It argued that under Section 9 of Article XXXIX of the Bargaining Agreement, there was no provision for recovery of a previous dues overpayment, and therefore the $80.33 had been illegally withheld from the December 1972 payment. *See* Article XXXIX, Section 9, *supra.*

. The union sought to resolve the matter by invoking the grievance and arbitration procedure established under the Bargaining Agreement, Articles XXVII and XXVIII.[3] On August 3, 1973, the arbitrator issued his decision upholding the union's position. Although he found that the $80.33 had been improperly deducted and paid to the union by mistake, the arbitrator ruled that the "self-help" remedy resorted to by the defendant in recouping the $80.33 was an "improper procedure," which violated the provisions of the Agreement. The opinion concluded:

\*  \*  \* Whether or not the Employer may have other avenues for recoupment, has not been considered by the Arbitrator. His opinion is limited to a finding that the particular method used in the instant case violated the provisions of the Collective Bargaining Agreement.

---

1. Article XXXIX, Section 8 of the Bargaining Agreement reads:

"The Union is responsible for promptly notifying, in writing, the Employer's payroll office when any member of the Union is expelled or for any reason ceases to be a member in good standing."

2. There is evidence that at least by May 22, 1972, the union president had been given notice of the change in Mr. Wright's status; the president had received a list of employees who were changing positions. Defendant's Brief at p. 8.

3. Plaintiff's Exhibit 1, at pp. 32–34.

The defendant did not pay plaintiff the sum awarded by the Arbitrator. Rather, the Government disbursing officer submitted the question to the Comptroller General as permitted by 31 U.S.C. §§ 74 and 82d. On October 1, 1974, the Comptroller General issued Opinion B–180095, ruling that the Government could not legally comply with the arbitrator's award. The decision stated in part:

It is a basic principle of law and commerce that a payee is not entitled to be paid by a payor any more money than is due. So where by mistake of fact at an earlier time a payee is paid more on an obligation than he is due, the payor may rightfully adjust subsequent payments to compensate for such overpayments or advancement of funds, so that the payee may not be unjustly enriched. 70 C.J.S. *Payment* § 157 (1951).

Therefore, we have concluded that the payments authorized under the agreement have been fully satisfied. Thus, no authority exists to pay any additional amount, notwithstanding the arbitration award.

Upon receipt of this decision, the union filed an unfair labor practice complaint with the Assistant Secretary of Labor for Management Relations, alleging that the defendant had violated sections 19(a)(1) and (6) of Executive Order 11491 as amended, 3 C.F.R. 254 (1974), by neither complying with the Arbitrator's award nor seeking review by the Federal Labor Relations Council. The Assistant Secretary of Labor ruled that although an unfair labor practice may have existed, there remained a question whether the Army had authority to pay the arbitrator's award in view of the Comptroller General's decision barring payment. The union then requested the Comptroller General to review and reconsider the earlier decision.

On April 30, 1975, the Comptroller General issued a second decision (B–180095, 54 Comp.Gen. 921), again barring the defend-

ant from paying the arbitrator's award. In this decision, the Comptroller General noted that 31 U.S.C. § 628 (1970) prohibited payment of Federal funds except "pursuant to law." Thus, the decision continued:

It was therefore not legally permissible for the agency to pay over to the union a sum amounting to $80.33 more than it was indebted to the union for. Accordingly, the arbitrator exceeded his authority in ordering the agency to make a payment for which it was not legally responsible.

The union then brought suit in this court to enforce the arbitrator's award.

I.

■ Although they agree on the facts, the parties differ in their statements of the issues of law. Plaintiff would have us view the question as the arbitrator viewed it: "[W]hether the Employer may, in effect, use self help to rectify its own mistake." [*In the Matter of Arbitration Between ABERDEEN PROVING GROUND DEPARTMENT OF THE ARMY and INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS AFL–CIO LOCAL 2424*, FMCS File No. 73K/09938, (August 3, 1973).]

Defendant, on the other hand considers this formulation of the issues as too narrow and simplistic. Defendant's view of the issue may be paraphrased as whether the court may enforce an arbitrator's award against the Government when the award is not mandated by the terms of the Bargaining Agreement and is contrary to law. As a secondary defense, defendant asserts that the court has no jurisdiction of the claim, but we find that it is not necessary to reach this question.[4] We agree with defendant's formulation of the issue and conclude that as a matter of law, plaintiff is not entitled to recover.

---

4. Much of the briefs of the parties has been devoted to the jurisdictional issue, but we defer decision on this question because it is clear that plaintiff has no case on the merits. *Travis*

*v. United States*, 199 Ct.Cl. 67, 70, n.1 (1972). However, on the jurisdictional issue, *see Bendure v. United States*, 554 F.2d 427, 213 Ct.Cl. 9 (1977).

It is so evident as scarcely to require acknowledgment, that in order to obtain recovery in this court, a plaintiff must show some statute, regulation or contractual agreement which entitles it to recover a sum of money from the Government. 28 U.S.C. § 1491. This requirement means that the plaintiff must show that it is entitled to the $80.33 which was erroneously paid to it after Mr. Wright's transfer and subsequently withheld by the Government from a later payment due the union. Clearly, the plaintiff has failed to show any such entitlement.

It was an integral part of the Bargaining Agreement between the union and the Government that once an employee left the bargaining unit, his dues "check-off" was to be discontinued. As indicated above, section 7b of Article XXXIX of the Bargaining Agreement specifically required that the dues check-off be terminated as soon as an employee was transferred out of the unit. This was not a precatory or advisory contractual provision; rather it was a binding requirement mandated by regulation. Department of Defense Directive 1426.1, VIII B.1.b (March 26, 1970) required that *all* such agreements for withholding union dues should contain the following provision:

> That an allotment shall be terminated when the employee leaves the unit as a result of resignation, retirement, transfer, or other separation from the rolls of the activity, reassignment, promotion (except temporary promotion), or other personnel action; when the dues withholding agreement between the activity and the labor organization is suspended or terminated; or when the employee has been suspended or expelled from the labor organization * * *.

The requirement set forth in this regulation is, moreover, reflective of an established policy throughout Government-labor relations. The Federal Personnel Manual (FPM) provides that the allotments of dues from an employee's pay shall be terminated when the employee "moves or is reassigned * * * to an organizational segment for which the labor organization has not been accorded exclusive recognition." FPM, Book 550, Subchapter S3–6(a) (Nov. 18, 1970). Civil Service Commission Regulations contain a similar requirement. *See* 5 C.F.R. § 550.322(c). And Executive Order 11491 provides that a dues allotment terminates when "the dues withholding agreement between the agency and the labor organization * * * ceases to be applicable to the employee." Exec. Order No. 11491, § 21(a)(1), 34 Fed.Reg. 17614 (October 31, 1969).

There is no question that the cited regulations were issued pursuant to statutory authority and had the force and effect of law. Allotments and assignments of civilian employees' pay are authorized by 5 U.S.C. § 5525. 5 U.S.C. § 5527, which is a part of the same basic statute, provides that the President and the head of each agency concerned shall prescribe and issue regulations appropriate for carrying out the provisions relating to the allotment of employees' pay. On January 2, 1962, the President issued Executive Order 10982, 27 Fed.Reg. 3. It provided that the Civil Service Commission was authorized to perform the statutory functions relating to the allotments and assignments of employees' pay. Thereafter, the Civil Service Commission issued the regulation which provides that any agreement between the union and the Government regarding deductions from employees' pay must include the provision that the allotment be discontinued when the employee is transferred out of the bargaining unit covered by the agreement.

Moreover, Executive Order 11491, pursuant to which the collective bargaining agreement was executed, expressly provided that the regulations referred to above would apply to that agreement. Section 12(a) of the Order reads as follows:

> Sec. 12. *Basic provisions of agreements.* Each agreement between an agency and a labor organization is subject to the following requirements—
>
> (a) in the administration of all matters covered by the agreement, officials and employees are governed by existing or future laws and the regulations of appro-

priate authorities, including policies set forth in the Federal Personnel Manual; by published agency policies and regulations in existence at the time the agreement was approved; and by subsequently published agency policies and regulations required by law or by the regulations of appropriate authorities, or authorized by the terms of a controlling agreement at a higher agency level; * * *. [34 Fed. Reg. 17611, (1969).]

Since the law, as provided in the regulations, required a termination of the dues allotment upon Mr. Wright's transfer, the payments made by the Government thereafter were both erroneous and illegal.

Therefore, the only question remaining is whether the manner in which the Government recouped the illegal payment was authorized. We note first that there is nothing in the Bargaining Agreement which bars the Government from resort to such a "self-help" procedure. Despite the reliance of the arbitrator and plaintiff on Article XXXIX, Section 9 of the Agreement, that section does not specifically prohibit the action taken by defendant. Although section 9 requires that the Government pay the union a "check * * * in the amount equal to the grand total of all such [dues] deductions," we think that this provision is intended to guarantee payment only of the dues *to which the union is entitled.* We cannot read it to mean that the union is entitled to retain dues which were improperly deducted from the employee's wages and mistakenly paid to the union.

Whereas there was nothing in the Bargaining Agreement forbidding the deduction made by defendant, such a "self-help" procedure was specifically authorized by Army regulations. Army regulation 37–105, para. 10–118, dated August 12, 1966, reads as follows:

* * * Adjustment to correct amounts erroneously withheld or where through error withholdings have not been made from the salary of a currently employed individual will be made on a subsequent payroll on which the employee's name appears.

* * * * * * *

* * * Appropriate entries will be made on the listing forwarded to the employee organization.

■ Few principles are so well established as the right of the Government to recover by offset or otherwise sums illegally or erroneously paid. Moreover, it cannot be estopped from doing so by the mistakes of its officers or agents. *Wisconsin Central RR v. United States,* 164 U.S. 190, 211–12, 17 S.Ct. 45, 41 L.Ed. 399 (1896); *United States v. Munsey Trust Co.,* 332 U.S. 234, 239–40, 67 S.Ct. 234, 91 L.Ed. 2022 (1947); *Fansteel Metallurgical Corp. v. United States,* 172 F.Supp. 268, 271, 145 Ct.Cl. 496, 499–500 (1959). Therefore, the means which the Government took to recover the illegal payment were not only authorized by the regulations but sanctioned by these well settled rules of law.

## II.

■ In an effort to avoid the difficult obstacle presented by the cited regulations, plaintiff maintains that judicial review of an arbitrator's decision is a limited one and that the court must enforce an arbitrator's award where the arbitrator does not "exceed the scope of his authority." In support of this position, plaintiff cites a long line of cases, including *United Steelworkers of America v. U.S. Gypsum Co.,* 492 F.2d 713 (5th Cir. 1974), *reversing* 339 F.Supp. 302 (N.D.Ala.1971); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). However, we reject plaintiff's argument because we find that the authorities cited are inapposite to the facts of this case. *See Byrnes v. United States,* 553 F.2d 105, 213 Ct.Cl. —— (1977).

In the first place, the cases cited by plaintiff all concern labor arbitration awards

made in the context of private labor disputes. Those decisions focus on the Congressional intent, as reflected in the Labor-Management Relations Act, 29 U.S.C. § 141, *et. seq.*, 61 Stat. 136, that industrial labor disputes be settled by arbitration. However, the definition of "employer" in the Labor-Management Act specifically excludes the United States, 29 U.S.C. §§ 142(3) and 152(2). Consequently, those cases, which limit judicial review and accord finality to decisions of arbitrators, including their construction of provisions of collective bargaining agreements, have no application to an arbitrator's decision made pursuant to a collective bargaining agreement between the Government and a union.

In the second place, we cannot agree with the plaintiff's contention that the arbitrator "did not exceed the scope of his authority" in awarding the $80.33 to the union. On the contrary, we find that he based his decision on a literal reading of one section of the collective bargaining agreement and ignored laws and regulations which were an integral part of that agreement and binding upon him as equally as on the parties. Since the decision was contrary to law, it cannot be upheld.

## CONCLUSION

It follows from what is said above that plaintiff's motion for summary judgment should be denied; defendant's cross motion for summary judgment should be granted, and plaintiff's petition should be dismissed. It is so ordered.