**Gary L. McDAVID**

v.

**TENNESSEE VALLEY AUTHORITY.**

**Civ. No. 2-81-180.**

United States District Court,
E.D. Tennessee,
Northeastern Division.

Nov. 18, 1982.

Charlton R. Devault, Jr., Kingsport, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, A. Jackson Woodall, Jr., Brent R. Marquand, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

In this action plaintiff alleges that defendant Tennessee Valley Authority (TVA) did not hire him because he was not a union member. Plaintiff says that TVA's preference for union employees violates his first and fifth amendment rights. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1337. The parties have stipulated the material facts.

Plaintiff is a carpenter from Kingsport, Tennessee. He was a member of the United Brotherhood of Carpenters and Joiners of America, Local Union No. 1512, from 1972 until 1977. He dropped out of the

Union because it was unable to find him work. Defendant TVA is an agency of the United States, created by and existing under the Tennessee Valley Act of 1933. 16 U.S.C. §§ 831–831dd.

In February 1981 plaintiff went to TVA's administrative office in Rogersville, Tennessee to look for work. TVA personnel told him that carpenter work was available. Plaintiff went to the local Union hall to discuss rejoining the Union. He did not join because he did not have the money to pay the standard initiation fee and dues (totaling $315.50).

Later in February, plaintiff again visited the TVA office and the Union hall. According to stipulation, the Union business agent would not accept partial dues payment for membership. Plaintiff, therefore, did not rejoin the Union. TVA called the business agent and requested plaintiff by name for a six-month temporary position. The business agent did not refer plaintiff because plaintiff did not belong to the Union and Union members were available for work. Pursuant to their Union preference policy, TVA hired Union members for the two six-month positions sought by plaintiff.

TVA's authority to establish its personnel and labor relations policy is contained in section 3 of the TVA Act, 16 U.S.C. § 831b:

The board shall without regard to the provisions of Civil Service laws applicable to officers and employees of the United States, appoint such managers, assistant managers, officers, employees, attorneys, and agents, as are necessary for the transaction of its business, fix their compensation, define their duties, and provide a system of organization to fix responsibility and promote efficiency. Any appointee of the board may be removed in the discretion of the board.

TVA is expressly exempt both from the National Labor Relations Act, which governs the private sector, 29 U.S.C. § 152(2), and from the statutes governing most federal employees' labor management relations, 5 U.S.C. § 7103(a)(3)(E).

Although TVA is under no statutory duty to bargain collectively, it has done so for many years. In 1940, TVA executed a "General Agreement" with the Tennessee Valley Trades and Labor Council. The Council is an association of craft unions representing TVA's trades and labor employees.

Article III.2. of the General Agreement is directly at issue here. It provides:

Membership in unions party to this agreement is advantageous to employees and to management, and employees are accordingly encouraged to become and remain members of the appropriate unions. Such membership is a positive factor in appraising relative merit and efficiency. Accordingly, within the limits permitted by applicable laws and Federal regulations, qualified union members are selected and retained in preference to qualified nonunion applicants or employees.

The General Agreement also includes provisions for negotiated wage schedules, jointly administered job classification standards, and negotiated work schedules, grievance procedures and training problems. The Agreement establishes a union-management "cooperative conference" program to improve morale, communication, and general working conditions. The Agreement covers both union and non-union TVA construction employees. Although TVA has non-union employees, it will and has hired union job applicants over similarly qualified non-union applicants, pursuant to the union preference clause of the Agreement.

TVA justifies the union preference clause by pointing to advantages of union help in screening job applicants. TVA has historically suffered from a shortage of skilled craft applicants for heavy construction. To be qualified, an applicant must have at least as much experience in the trade as required to complete an apprenticeship. This may be up to four years in some trades. TVA believes that the unions serve as a ready source of potentially qualified candidates for available TVA jobs which must often be staffed on short notice. TVA relies on the unions' maintenance of high standards and their certification of their referrals' qualifications. TVA be-

lieves that the unions' knowledge of the availability and qualifications of their members and ready access to those members serves to reduce TVA's recruitment costs.

TVA also believes that its centralized bargaining promotes efficient and harmonious labor relations. Both TVA and the unions are of the opinion that a union preference clause discourages "free riders" who accept collective bargaining benefits without contributing their share of the expenses. TVA believes the unions can more effectively represent the employees if they are members.

The sole issue in this case is whether the union preference clause is constitutional. Plaintiff cites the Civil Service Reform Act of 1978 which makes it an unfair labor practice for any federal agency "to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment." 5 U.S.C. § 7116(a)(2). Although TVA is exempt from the Civil Service laws, plaintiff contends that the first and fifth amendments prohibit any federal employer from discriminating on the basis of union status. He says TVA's union-preference policy has no rational relationship to the jobs to be performed.

TVA contends that the Council and union contribution to the TVA program justifies the union-preference clause. It says the clause bears a rational relationship to TVA's statutory programs, including efficient employee hiring practices and general labor management working relations.

■■■ The standard of scrutiny for classifications based on union membership is "relatively relaxed." *City of Charlotte v. Local 660, International Association of Firefighters,* 426 U.S. 283, 286, 96 S.Ct. 2036, 2038, 48 L.Ed.2d 636 (1976). No suspect classification is involved. *Id.; see also Memphis American Federation of Teachers, Local 2032 v. Board of Education,* 534 F.2d 699 (6th Cir.1976). Neither are fundamental rights implicated in this case. While forced ideological or political conformity might implicate a fundamental right or raise a first amendment issue, plaintiff does not make such a claim. *See Railway Employees Department v. Hanson,* 351 U.S. 225, 236–238, 76 S.Ct. 714, 720–21, 100 L.Ed. 1112 (1956); *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). Consequently, we have only to determine whether the classification is rationally related to achieving a valid governmental interest. *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Memphis American Federation of Teachers,* 534 F.2d at 703. Such classifications have uniformly withstood constitutional challenges in the past. In *Hanson,* railway employees sued to enjoin a union shop agreement between their railroad employer and labor organizations. 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112. The Supreme Court upheld the Railway Labor Act provision allowing closed shops. 45 U.S.C. § 152. In the words of Justice Douglas:

Industrial peace along the arteries of commerce is a legitimate objective; and Congress has great latitude in choosing the methods by which it is to be obtained.

The choice by the Congress of the union shop as a stabilizing force seems to use to be an allowable one. Much might be said *pro* and *con* if the policy issue were before us. Powerful arguments have been made here that the long-run interests of labor would be better served by the development of democratic traditions in trade unionism without the coercive element of the union or the closed shop.... But the question is one of policy with which the judiciary has no concern... The task of the judiciary ends once it appears that the legislative measure adopted is relevant or appropriate to the constitutional power which Congress exercises. The ingredients of industrial peace and stabilized labor-management relations are numerous and complex. They may well vary from age to age and from industry to industry. What would be needful one decade might be anathema the next. The decision rests with the policy makers, not with the judiciary.

351 U.S. at 233–234, 76 S.Ct. at 719.

Likewise, in *Abood,* teachers challenged a Michigan statute authorizing local govern-

ment employers and unions to agree to an agency shop. 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261. The Court carefully examined federal labor policy and the earlier cases of *Hanson* and *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), upholding closed shops. The governmental interests in labor peace, the avoidance of employee conflicts, and the risk of "free riders" were all cited as legitimate justifications for an exclusivity rule. 431 U.S. at 224, 97 S.Ct. at 1794.

Turning to the instant case, we find that Congress expressly excluded TVA from the coverage of the Labor-Management Provisions of the Civil Service Act. 16 U.S.C. § 831b. Congress authorized TVA's Board of Directors to provide a system of organization for TVA's labor force consistent with TVA's unique purposes. *Id.* In viewing TVA's adopted policy, the Court is bound by the decisions of the Supreme Court of the United States and the Sixth Circuit, cited above. These opinions appear controlling either explicitly or by implication. As Justice Stewart stated in *Abood:*

> Our province is not to judge the wisdom of [the government's] decision to authorize the agency shop in public employment. Rather it is to adjudicate the constitutionality of that decision. The same important government interests recognized in the *Hanson* and *Street* cases presumptively support the impingement upon associational freedom created by the agency shop here at issue.

431 U.S. at 224–225, 97 S.Ct. at 1794.

The Court sympathizes with plaintiff's situation in this case. It is unfortunate that qualified and deserving people may be overlooked if TVA continues its exclusionary policy. We must find, however, that the policy passes constitutional scrutiny.

For the foregoing reasons, it is ORDERED that judgment enter in favor of defendants. It is further ORDERED that the case be, and the same hereby is, dismissed.

Order Accordingly.