**SALARY POLICY EMPLOYEE PANEL,**
**Plaintiff-Appellee,**

v.

**TENNESSEE VALLEY AUTHORITY,**
**Defendant-Appellant.**

**No. 82–5581.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1983.

Decided April 3, 1984.

Rehearing and Rehearing En Banc
Denied July 18, 1984.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Robert C. Glinski, argued, Brent R. Marquand, Tenn. Valley Authority, Knoxville, Tenn., for defendant-appellant.

Bernard E. Bernstein, Knoxville, Tenn., Joseph E. Finley, argued, Baltimore, Md., for plaintiff-appellee.

Before MERRITT, Circuit Judge, PHILLIPS, Senior Circuit Judge, and SPIEGEL, District Judge.*

* The Honorable S. Arthur Spiegel, District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

SPIEGEL, District Judge.

Tennessee Valley Authority (TVA) appeals from an order of the United States District Court for the Eastern District of Tennessee granting plaintiff Salary Policy Employee Panel's (Panel) motion for summary judgment in an action brought by the Panel to compel TVA to submit four unrelated grievances to arbitration and for $1 million damages for injuries allegedly suffered by the Panel as the result of TVA's purported plan to weaken the Panel and its constituent unions. TVA raises two issues on appeal. First, it asserts that principles of arbitration law developed in conjunction with collective bargaining agreements involving private employers are not applicable to TVA because it is a government agency. TVA reasons that it is therefore entitled to a judicial rather than a arbitral determination of arbitrability. Second, TVA maintains that the four grievances at issue here are matters specifically excluded from arbitration under the terms of the collective bargaining agreement. We disagree.

## I.

Plaintiff Panel[1] and defendant TVA are parties to a collective bargaining agreement, the Articles of Agreement (Articles), covering the rights and duties of TVA's non-management, white-collar employees. This agreement is comprised of seven Articles and twenty-four Supplementary Agreements. Supplementary Agreement 11(A) provides in pertinent part:

> An employee who believes he has been treated unfairly, or who disagrees with his supervisors as to the application of a policy to him as an employee, may file a grievance.

. . . . .

> A grievance may not be filed to change an established policy, standard, or procedure. Changes in these are made only through negotiation.

Supplementary Agreement 11 goes on to outline the grievance procedure. The Panel may appeal to an arbitrator any grievance which is unresolved following exhaustion of the grievance procedures provided. Supplementary Agreement 11(D).

The Panel sought to arbitrate four unrelated disputes that had arisen over two years and that are the subject of this suit. TVA denied arbitration, contending that the disputes are not arbitrable under the Articles. The district court summarized the four disputes as:

1. Watkins Grievance: An employee claimed unfair treatment because his superior refused to release him to accept a position outside the contract's coverage.

2. Reclassification of Auditors: Certain auditor jobs were reclassified as management positions and therefore removed from the bargaining unit.

3. Hartsville Nuclear Plant: TVA reassigned job duties and eliminated two bargaining unit positions.

4. Job Shoppers Grievance: TVA used contract employees to fill bargaining unit positions.

*Salary Policy Employee Panel v. Tennessee Valley Authority*, 548 F.Supp. 268, 269 (E.D.Tenn.1982).[2]

The parties submitted the matter on cross-motions for summary judgment as the facts were essentially undisputed. Relying on the preference for arbitration created by the Steelworkers Trilogy,[3] the trial court ordered that all four grievances plus the $1 million damage claim be submitted to arbitration. Judge Taylor stated that

---

1. The Panel is an association of five groups of labor organizations representing professional, administrative, clerical, service, and security employees.

2. Having reviewed the parties' description of the grievances, we see no reason not to adopt Judge Taylor's descriptions for purposes of this discussion.

3. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Can Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

"resolution of the grievability of the issues as well as the substantive issues themselves require interpretation of the Articles of Agreement," noting that arbitrator is better able to construe ambiguous contract language. 548 F.Supp. at 269. Stating that resolution of the grievances should satisfy any claim for damages, Judge Taylor ordered that the issue of damages also be submitted to the arbitrator. *Id.*

## II.

TVA argues that principles of law based upon federal statutes governing labor relations between private employers and their employees should not be applied to the TVA. In particular, TVA objects to the lower court's reliance on the Steelworkers Trilogy as those cases were all brought under § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Noting that TVA is specifically exempted from the coverage of federal labor statutes, 29 U.S.C. §§ 152(2), 142(3), TVA concludes that the lower court improperly relied on the preference for arbitration and the principle that questions of arbitrability should be referred to the arbitrator where the contract language is ambiguous. Consequently, according to the appellant, TVA is entitled to a judicial determination of arbitrability.

We recognize that TVA, as an agency of the United States, has been specifically exempted from the LMRA. Nonetheless, we can find no valid reason not to apply principles of arbitration law developed in the context of private sector labor disputes. Accordingly, we hold that principles of arbitration law developed in private sector labor disputes and enunciated by the United States Supreme Court in the Steelworkers Trilogy shall be applied to labor disputes between the TVA and unions with which it has a collective bargaining agreement. In addition, we find that the arbitrability of a labor dispute between TVA and the Panel is a question for the arbitrator in the absence of an express provision in the collective bargaining agreement excluding the particular grievance from arbitration, or the most forceful evidence of an intent to exclude the dispute from arbitration. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960).

## III.

TVA contends that case law supports not applying private sector arbitration principles to its labor disputes with the Panel. It refers us to the statement in *Lodge 2424, International Association of Machinists v. United States*, 215 Ct.Cl. 125, 564 F.2d 66, 72 (1977), to the effect that the LMRA has no application to labor disputes between the Government and a union.

In *Lodge 2424*, an action to enforce an arbitrator's award against the Government, the primary issue on appeal was whether the Court may enforce an arbitrator's award against the Government when the award is not mandated by the collective bargaining agreement and is contrary to law. 564 F.2d at 69. In other words, *Lodge 2424* was not concerned with the principles to be applied in determining the arbitrability of a dispute between a government agency and a union. The court found that the arbitrator had exceeded his authority and thus that the award was contrary to law and could not be enforced. *Id.* at 72. Obviously, the court's statement about the applicability of the LMRA was addressed to a situation clearly distinguishable from the one at hand. Equally obviously, the statement was not necessary to the decision.

The other cases relied on by TVA for the proposition that principles of arbitration law developed in the private sector context cannot be applied to TVA are even less persuasive. *Kuhn v. National Association of Letter Carriers, Branch 5*, 570 F.2d 757 (8th Cir.1978); *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3d Cir.1976); *Local 1498, American Federation of Government Employees v. American Federation of Government Employees*, 522 F.2d 486 (3d Cir.1975); *New Jersey County & Mu-*

*nicipal Council # 61 v. American Federation*, 478 F.2d 1156 (3d Cir.), *cert. denied*, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 218 (1973). Arbitrability of a labor dispute between a government agency and a union was not an issue in any of these cases.

TVA also refers us to *McDavid v. Tennessee Valley Authority*, 555 F.Supp. 72 (E.D.Tenn.1983), and *Newman v. Tennessee Valley Authority*, Civ. No. 1–81–311 (E.D.Tenn. Jan. 11, 1983), for the proposition that there is no basis for applying to TVA by analogy a policy declared by inapplicable statutes serving different purposes.

In *McDavid*, a non-union carpenter challenged the union preference clause of TVA's collective bargaining agreement with the Tennessee Valley Trades and Labor Council. The district court described "the sole issue" as the constitutionality of the union-preference clause. In *Newman*, brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, the district court granted defendant's motion for summary judgment on the grounds that plaintiff had failed to present a prima facie case of age discrimination. The court also held that the ADEA does not provide federal employees with a cause of action for reprisals, pointing out that § 633a(f) of the ADEA specifically provides that no other section of the ADEA applies to actions against federal employers.

We find *McDavid* and *Newman* singularly inapposite. In one case, the court was called upon to apply established constitutional principles; in the other, to construe a federal employment discrimination statute. The instant case does not require application of established constitutional principles or statutory construction.

TVA next argues that applying private sector arbitration law to TVA's labor disputes runs counter to congressional intent that TVA be innovative in seeking solutions to the matters for which it is responsible, including labor relations. TVA also contends that submitting questions of arbitrability to the arbitrator will lessen the power of the federal government. It points out

that Congress authorized TVA to establish the terms and conditions of employment for its employees as well as a system of organization, 16 U.S.C. § 831b, and that TVA, unlike a private employer, is not required to bargain about any employment matters. TVA further argues that when it chose to bargain as a matter of policy, TVA's Board stressed the limitations on the scope of bargaining, quoting from the 1936 Annual Report:

> [T]he Federal Government must be in final control. In this respect the Authority differs from a private employer. Subject to these conditions, the Authority can establish governing principles upon which a progressive program of employee relations may be based.

1936 TVA An.Rep. at 304. This limitation was recognized in the Articles of Agreement first signed by TVA and the Panel in December, 1950. Article II.A provides:

> TVA and the Panel recognize that TVA is an agency of, and is accountable to, the Government of the United States of America and therefore must operate within the limits of its legal authority and responsibility and cannot surrender the ultimate authority of the United States.

We find both of these arguments without merit.

We do not see how applying established principles of arbitration developed in the private sector context impinges on TVA's ability to be innovative to any greater degree than would the alternative of developing a new body of law applicable only to TVA's labor disputes with its unions. Nor do we see how requiring TVA to submit questions of arbitrability to an arbitrator restricts the agency's ability to be innovative in labor matters to any greater degree than would submitting questions of arbitrability to a court. In either case a third party—not TVA—is deciding how a particular labor dispute will be characterized.

In addition, we are unpersuaded that applying private sector labor law arbitration principles or submitting questions of arbitrability to an arbitrator will lessen the

control of the federal government. Some principles of law must be applied, whether an established body of law or a newly developed one. And someone must decide whether a particular dispute is arbitrable, whether arbitrator or court. In either situation, regardless of the choice, one might conceivably argue that the power of the federal government has been lessened. If it has been lessened, however, it is only because in negotiating the Articles of Agreement with the Panel, TVA agreed to subject certain matters to the collective bargaining process, thereby giving up its right to exercise power unilaterally over those subjects.

■ We agree with TVA that the agency has the power to decide what matters it will subject to bargaining and what matters will be excluded. We also agree that the collective bargaining agreement extends no further than the matters which TVA has agreed to bargain. However, the issue here is not whether the Panel is seeking to extend the coverage of the collective bargaining agreement. Instead it is what principles of law should be applied in determining whether a dispute is arbitrable.

TVA has presented us with no compelling reason why principles of arbitration law developed in the private sector should not be applied to TVA's labor disputes. To the contrary, we find several reasons why it is appropriate to apply such principles.

■ It is well settled that federal law governs the validity and construction of contracts through which the United States exercises its constitutional functions. *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944). Private sector arbitration law

dealing with labor disputes is a cohesive and well-developed body of law with which federal courts are well acquainted. The alternative to using existing principles is to develop a new body of law applicable to collective bargaining agreements involving government agencies. We see no reason to engage in such a development.

■ Furthermore, the collective bargaining agreement at issue here—although not identical to private sector agreements—certainly has many similarities to those governed by federal labor law.[4] TVA reminds us, however, that in the private sector, an arbitration clause is the *quid pro quo* for a no-strike clause, but that TVA's employees have no right to strike as they are federal employees. The absence of the right to strike, however, does not sufficiently distinguish the Articles from private sector collective bargaining agreements so as to preclude application of developed principles. Indeed, the grievance and arbitration provisions of the Articles, like similar provisions in private sector agreements, serve the same basic function—to provide efficient procedures for resolving labor disputes.

The functions served by grievance and arbitration procedures in the private sector are almost identical to those served by such procedures in the public sector. In both instances, grievances and arbitration procedures provide a relatively speedy and inexpensive method of resolving labor disputes, give the employee the satisfaction of knowing that the resolution of any dispute he may have with his employer lies with a neutral party and not with his employer, and preserve judicial resources by establishing a method for resolving labor disputes independent of the courts. In the

---

4. For example, the Articles of Agreement include provisions for recognizing a labor organization as the exclusive bargaining agent; for determining appropriate bargaining units (to be governed by principles utilized by the National Labor Relations Board); and for modifying, abolishing or adopting supplementary agreements, including mediation and advisory arbitration procedures. The Supplementary Agreements cover more specific matters, for example, procedures for assigning new classes of work to

appropriate bargaining units and allocating positions to classes, for employee transfers, and for reductions in force. Supplementary Agreement 11 which outlines the grievance and arbitration procedures is distinguishable from similar clauses in collective bargaining agreements of private employers primarily because the agreement to arbitrate is not a *quid pro quo* for a no-strike clause as is typical of private agreements.

private sector, arbitration helps to maintain industrial peace by giving employees an alternative to the strike. In the public sector, arbitration helps to preserve industrial peace by giving employees some recourse when a dispute arises.

Given all these similarities plus the existence of a well-developed body of federal common law, we conclude that it is eminently sensible to apply existing principles of arbitration law to labor disputes involving TVA. Our conclusion is reenforced by the fact that state courts increasingly are applying principles developed in the private sector to public employee labor disputes.

In *Rockland Professional Fire Fighters Association v. City of Rockland*, 261 A.2d 418 (Me.1970), the Supreme Judicial Court of Maine construed an arbitration statute governing employee-employer relations in the private sector and a subsequent statute giving firefighters the right to organize and bargain collectively *in pari materia*. The court held that the legislative grant to firefighters of all the rights of labor other than the right to strike or engage in work stoppages or slow-downs included the right to submit disputes to arbitration. *See also Providence Teachers Union Local 958 v. School Committee of Providence*, 108 R.I. 444, 276 A.2d 762 (1971). The Supreme Court of Connecticut has held not only that Connecticut's private sector arbitration law shall apply to public employee labor disputes but further that the federal rule favoring arbitration shall be applied to such public sector labor disputes. *Policemen's and Firemen's Retirement Board v. Sullivan*, 173 Conn. 1, 376 A.2d 399 (Conn.1977), quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

We find the reasons for applying federal common law principles of private sector arbitration law compelling. Accordingly, we hold that principles of private sector arbitration law shall be applied to labor disputes between TVA and the Panel.

### IV.

TVA has argued that it is entitled to a judicial rather than an arbitrable decision as to whether a particular dispute must be submitted to arbitration.

Because arbitration is a matter of contract, the question of arbitrability is for the courts to decide where the parties so agree. *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352. The party asserting that the parties excluded from court determination the question of arbitrability "must bear the burden of a clear demonstration of that purpose." 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7. The general *Warrior & Gulf* rule is that grievances should be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 363 U.S. at 582–83, 80 S.Ct. at 1352–53. Applying the general *Warrior & Gulf* rule to questions of arbitrability, we conclude that the party asserting that questions of arbitrability should be decided by the arbitrator satisfies his burden by demonstrating that it cannot be said positively that the parties intended to have a court decide questions of arbitrability. "Doubts should be resolved in favor of coverage." 363 U.S. at 583, 80 S.Ct. at 1353.

Supporting our conclusion is the recognition that arbitrators are in a better position to decide issues of arbitrability as they are more familiar with the customs and practices of a particular industry, the collective bargaining agreement at issue, and the parties to such an agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Finally, the arbitrator's decision is reviewable by the court. This review is, of course, limited to determining whether the arbitrator acted beyond his authority. 363 U.S. at 597, 80 S.Ct. at 1361; *Morgan Services v. Local 323, Chicago and Central States Joint Board, Amalgamated Clothiers and Textile Worker Union, AFL–CIO*, 724 F.2d 1217 at 1220 (6th Cir.1984). Nevertheless, such a review is adequate given the arbitrator's greater familiarity with the issues

and the parties' agreement to arbitrate certain disputes.

Supplementary Agreement 11(A) sets forth the procedures to be followed by "an employee who ... disagrees with his supervisors as to the application of a policy to him." Supplementary Agreement 11(D) states that if the grievance remains unresolved after exhaustion of these procedures, the Panel may appeal to the arbitrator. The contract is silent as to the steps to be followed where TVA disputes the grievability of a particular dispute and refuses to process the dispute through the grievance procedures.

■ In this case, TVA refused to process the four disputes through the grievance procedure on the grounds that all four disputes were attempts to change established policy. Supplementary Agreement 11(A) states that policies can be changed only through negotiation. The Panel insists that the disputes involve the application of policies and thus should be resolved by the procedures outlined in Supplementary Agreement 11. It is well established that arbitrators are charged not only with deciding factual disputes but also with interpreting the collective bargaining agreement. *American Federation of Television and Radio Artists v. Storer Broadcasting Co.*, 660 F.2d 151, 153 (6th Cir.), *cert. denied*, 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981).

Under these circumstances, we conclude that it cannot be said with assurance that the parties agreed to exclude questions of arbitrability from arbitration. Accordingly, we find that the district court correctly submitted the question of arbitrability to the arbitrator.

### V.

Having established the principles to be applied in cases like the instant one, we turn to TVA's contention that the disputes at issue here are not subject to arbitration under the Articles of Agreement. Again we disagree.

■ Although arbitration is the favored means of resolving labor disputes, the obligation to arbitrate is a matter of contract. *Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1352. Whether the parties have agreed to arbitrate a particular dispute is a matter for the court. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). In determining whether or not the parties have agreed to arbitrate a particular dispute, the court must first discern whether there is any ambiguity in the collective bargaining agreement with respect to the dispute. If there is any such ambiguity, arbitration is appropriate. *International Union v. General Electric Co.*, 474 F.2d 1172 (6th Cir.1973).

■ Our task, therefore, is to examine the collective bargaining agreement to determine whether the parties have clearly agreed to exclude these types of labor disputes from arbitration. If there is no ambiguity in the agreement, then the court must adhere to the intent of the parties. *Id.* at 1175-77. If examination reveals ambiguity, however, then those ambiguities must be resolved in favor of arbitration. *Warrior & Gulf*, 363 U.S. at 583, 80 S.Ct. at 1353. *International Union*, 474 F.2d at 1177.

The first of the disputes involves a complaint by Watkins that his supervisors would not release him from the bargaining unit in which he was presently working in order to accept a trades and labor job not represented by the Panel. TVA asserts that an employee represented by the Panel has no right under the Articles to a trades and labor job and concludes that Watkins was attempting to change this policy. The Panel, however, maintains that this dispute involves the unfair application of a policy.

The second dispute raises the question of whether TVA may unilaterally remove from the bargaining unit positions that TVA believes belongs in management. TVA argues that it has the right to decide who will be in management. The Panel acknowledges TVA's right to establish

management-level positions but points out that the positions in question here are those of internal auditors, positions which have been considered part of the bargaining unit since the Articles were first adopted. In other words, the Panel asserts that TVA has done no more than make a change in title and unilaterally take out of the contract jobs that have traditionally been covered by the contract.

The third dispute involves reassignments of job duties at the Hartsville Nuclear Plant and the elimination of two bargaining unit positions. Again, TVA asserts that this dispute involves TVA's right to decide what work is managerial and what work should be performed within the bargaining unit. The Panel describes the issue as TVA's transfer of duties to management, asserting that the classification of work and determination of appropriate pay schedules are subjects suited to the grievance procedure.

In the fourth dispute the Panel asserts that TVA used contract employees to do work ordinarily done by bargaining unit positions. TVA, on the other hand, argues that it is authorized by statute "to enter into such contracts ... upon such terms and conditions and in such matter as it may deem necessary," 16 U.S.C. § 831h(b), and concludes that its decision to use contract personnel is a management decision not subject to arbitration.

Our review of these four labor disputes does not allow us to say with positive assurance that the parties agreed to exclude such disputes from arbitration. Whether each of these disputes involves the unfair application of a policy, as the Panel maintains, or an attempt to change an established policy or procedure, as TVA maintains, is a question for the arbitrator to determine based on his interpretation of the collective bargaining agreement. In short, the threshold question for the arbitrator is the arbitrability of each of the disputes. Accordingly, we find that we should, and hereby do affirm, that part of the district court order ordering that these four disputes, including the question of their arbitrability, be submitted to arbitration.

## VI.

The circumstances are different, however, with regard to the Panel's $1 million claim for damages which the district court also ordered submitted to arbitration. That order was clearly error.

The Panel's cause of action with respect to the $1 million claim is based upon an alleged "plan, program and campaign to weaken and emasculate [the] Panel ... and to breach the Articles of Agreement." The Panel did not demand arbitration of this claim. In addition, nothing in the Articles permits arbitration of such a claim, nor has the Panel argued on appeal that such a claim should be submitted to arbitration. We find that the parties have clearly not agreed to submit to arbitration claims for damages arising out of alleged breaches of the collective bargaining agreement. Accordingly, that part of the district court's order requiring that the damage claim be submitted to arbitration must be, and hereby is, reversed.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.